David W. LANIER, Plaintiff–Appellee,

v.

Bill REVELL et al.,
Defendants–Appellants.

Supreme Court of Tennessee.

Sept. 25, 1980.

Russell L. Moore, Jr., Farmer & Moore, Dyersburg, for plaintiff–appellee.

James E. Lanier, John W. Palmer, Dyersburg, for defendants--appellants.

## OPINION

HARBISON, Justice.

This case involves a contest of an election held on November 6, 1979, for the office of Mayor of the City of Dyersburg. In a closely contested race appellant Bill Revell was certified as having won by a majority of five votes, he having received 2,565 votes and appellee David W. Lanier having received 2,560. In election contest proceedings appellee successfully challenged the results. After a three–day hearing, the Chancellor found that there had been more than five, and a minimum of at least seven, illegal ballots cast. He declared the election void, the office of mayor vacant, and ordered a new election pursuant to T.C.A. §§ 2–14–101 to 106.

The Chancellor made detailed findings of fact, including a finding that at least seven persons, who would otherwise have been entitled to vote in the municipal election under consideration, had been permitted to register on or before the date of the election, and after the time prescribed for closing of the registration records. T.C.A. § 2–2–109 provides:

"Any qualified voter may register or have his registration altered at the commission office at any time the office is open except that there shall be no registration or alteration of permanent registration records for twenty–nine (29) days before any election established by statute."

The charter of the City of Dyersburg requires that voters in municipal elections be qualified under the general registration laws of the state, and it is clear that the county Election Commission undertook to follow and enforce the statutory requirements for registration. Nevertheless, at least three persons were permitted to register for the first time for the November 6, 1979, election after the close of registration on October 5, 1979. At least four others were permitted to register and vote on the basis of property qualifications–that is, they owned property in the city and resided in the county. None of these four persons, however, had ever previously registered to vote in a municipal election, nor did they do so prior to the October 5 closing date. On the other hand, a number of other persons owning property within the city limits and residing in the county were denied registration after the cut–off date, and it is clear that the Election Commission intended the cut–off date to apply to all classifications of voters.

The record reflects that there was a great deal of uncertainty regarding registration for this particular election because of the fact that during 1979 the boundaries of certain city precincts had been altered by action of the Mayor and Board of Alder-

men. Previously the precinct boundaries for all elections had coincided, but during 1979 there were changes in some of the precinct boundaries for purposes of municipal elections only. The Election Commission did not follow the statutory provisions for publishing the changed boundaries and notifying voters whose polling places were changed. T.C.A. § 2–3–105. On the contrary, since the polling places were changed only for municipal elections and not for purposes of county, state or federal elections, the Commission undertook to have each voter fill out a duplicate set of registration forms. While this procedure was initially intended to be completed prior to the expiration of the regular registration period on October 5, 1979, it had not in fact been completed. The Commission accordingly concluded to permit the so–called "re–registration" of city voters to continue through the date of the election, November 6.

The result was that a number of voters apparently were permitted to vote in the wrong precinct, and there were numerous other technical violations of the general election laws. Most of these, however, were minor in nature and in our opinion were not such as would render the ballots of the voters illegal or result in voiding the election. *Cf. Paine v. Ramsey*, 591 S.W.2d 434 (Tenn.1979).

It is conceded by appellants that numerous irregularities occurred, but they insist that only a substantial compliance, rather than a strictly literal compliance, with the election laws is required. We are in general agreement with that proposition,[1] but we are of the opinion that the provisions for permanent registration and the closing of the registration records twenty–nine days prior to a regular election are of great importance in the orderly administration of the election laws. Absent proof of fraud, we would not be inclined to hold illegal either the ballots of persons who merely voted in the wrong city precinct or

---

1. The provisions for absentee voting must be strictly observed, but they are not involved in this case to any substantial degree. *Cf. Emery*

*v. Robertson County Election Commission*, 586 S.W.2d 103, 108–109 (Tenn.1979).

the ballots of woman who had married since their prior registration and who had simply failed to report a change of name. A number of these and other relatively minor infractions are cited and relied upon by appellees, but we do not think them to be of sufficient importance to disqualify the respective voters involved.

On the other hand, we are of the opinion, as was the Chancellor, that there were more than five clearly illegal ballots cast in the election because of the improper and unauthorized late registration of voters who had not previously registered to vote in municipal elections. We are unable to regard these as minor or technical violations but are constrained to the view that they are violations of major and important statutory provisions governing the registration of voters. Accordingly the judgment of the Chancellor, holding the election to be void and ordering a new election, is affirmed at the cost of appellants.

The Chancellor did not find fraud in the conduct of the election or of the registration prior thereto. The evidence does not preponderate against that finding. It does reveal that the chairman of the county Election Commission was the campaign manager for the successful candidate for mayor. While this is not a direct violation of the election laws, we agree with the Chancellor that it creates an appearance of impropriety which, in a close election like this one, arouses suspicion and distrust of the administration of the election laws. Although we do not find that the relationship between the chairman of the Election Commission and the successful candidate was such in this particular case as to void the election, we can only agree with the Chancellor that such a relationship is, at a minimum, ill–advised. Members of an election commission are not, of course, disqualified from voting, but partisan activities on their part are almost certain to foment contests of elections which might not otherwise be challenged.

The cause is remanded to the chancery court for enforcement of the judgment and for the calling of a new election as prescribed by T.C.A. §§ 2–14–101 to 106.

BROCK, C. J., and FONES, COOPER and DROWOTA, JJ., concur.

