Jane B. FORBES, Appellant,

v.

Henry Denmark BELL, Appellee,

and

The Hickman County Election Commission, composed of: Eric Coleman, chairman, and Martha Baker, Polly Chesser, Ricky Canady and Sowell Sawyor, members,

and

The Williamson County Election Commission, composed of: Lillian Peach, chairman, and Ann Thornton, Ruth Edmonson, C.L. McGehee, and Gordon D. Lampley, members, Appellees.

Supreme Court of Tennessee,
at Nashville.

Sept. 9, 1991.

Winston Evans, Nashville, Margaret M. Spencer, Franklin, Robert T. Mann, Gainesville, Fla., Larry Helm Spalding, Tallahassee, Fla., for appellant.

Charles H. Warfield, James G. Martin, III, Julian L. Bibb, Nashville, for appellee Bell.

Charles W. Burson, Atty. Gen. and Reporter Michael W. Catalano, Deputy Atty. Gen., Nashville, for appellee Election Commissions.

## OPINION

DAUGHTREY, Justice.

This is an election contest arising out of the August 1990 race between Jane B. Forbes and Henry Denmark Bell for the position of Circuit Court Judge in the Twenty–First Judicial District of Tennessee, comprised of Williamson, Hickman, Perry, and Lewis Counties. Forbes filed her complaint and an amended complaint

within ten days after the election, as required by T.C.A. § 2–17–105. The trial court denied Forbes's motion to file a second amended complaint outside the statutory ten-day period and dismissed the first two complaints for failure to state a cause of action upon which relief could be granted. Forbes appeals both actions to this Court. For the reasons set out below, we affirm the judgment of the trial court.

### 1. Effect of Statutory Limitation on Amendment to Complaint

T.C.A. § 2–17–105 is clear and unambiguous in its statement that "[t]he complaint contesting an election under § 2–17–101 shall be filed within ten (10) days after the election." This special statute of limitations has long been strictly applied in election contests, which are purely creatures of statute and were not recognized at common law or in equity. *Harmon v. Tyler*, 112 Tenn. 8, 83 S.W. 1041, 1044 (1903). The proceedings in an election contest are said to be summary in nature, and the statutory prerequisites are considered jurisdictional. *Id.* Hence, the court cannot review grounds for invalidating election results unless they have been filed within the statutory period, rules of practice in civil actions to the contrary notwithstanding. *Id.* Indeed, the legislature has not only reaffirmed but also tightened the time limitation over the years, reducing the original 20–day filing period to the current limitation of ten days. Pub. Acts 1972, Ch. 740, § 1, codified at § 2–17–105.

Because the statute controls, we reject the contestant's argument that the relaxed pleading requirements of the Tennessee Rules of Civil Procedure, specifically provisions regarding the amendment of complaints found in Rule 15, have altered former case law in this respect. As late as 1978, seven years after the civil rules took effect, this Court held in a declaratory judgment action to invalidate the results of an election referendum that the ten-day statutory limitation applies to amendments and exhibits to complaints, as well as to complaints themselves. *Dehoff v. Attorney General*, 564 S.W.2d 361, 363 (Tenn. 1978), citing *State ex rel. Davis v. Kivett*, 180 Tenn. 598, 603, 177 S.W.2d 551, 553 (1944).

In *State ex rel. Davis v. Kivett*, this Court reiterated the well-established rule with regard to the statutory limitation in election contests, applying it strictly to those "amended or other pleadings, making new charges on which to contest the election." *Id.* 177 S.W.2d at 553, quoting *Harmon v. Tyler, supra*, 83 S.W. at 1044. Of course, if the complainant seeks only to correct technical matters, the court may accept the late filing. *Hollis v. Vaughan*, 192 Tenn. 118, 237 S.W.2d 952, 953–954 (1951) (amendment "perfecting a statement in a cause of action previously stated" was proper). Amendments that merely allege in more detail grounds already alleged may also be allowed, in the discretion of the trial court. *Blackwood v. Hollingsworth*, 195 Tenn. 427, 260 S.W.2d 164, 166 (1953).

In this case, Forbes's second amended complaint contains various allegations and grounds for her suit that did not appear in her previously filed complaint or in the initial amended complaint. For example, she attempted to delete paragraphs 3 through 8 of the amended complaint in their entirety and substitute new language. These new paragraphs contain matters not raised in the previously filed pleadings, such as a comparison of the ratio of absentee votes to votes cast in person in Hickman and Williamson Counties; a detailed listing of the alleged irregularities organized by precinct and voter; allegations of irregularities in the manner in which the votes of shut-in or institutionalized persons were cast; allegations of irregularities in the voting of specifically named persons not referred to in the previously filed pleadings; affidavits in support of the previously raised allegations regarding the use of paper ballot and boxes; and allegedly incorrect instructions given to voters by officials regarding whom they could vote for, depending on whether they voted in the Republican or Democratic primary. While these matters might well have been relevant at trial, they were raised too late to be considered in this case. We are thus left to

review the propriety of the trial court's action based solely on the grounds stated in the original complaint and the timely-filed amendment to it.

### 2. Substantive Grounds for Relief

■ Under Tennessee law, there are two grounds upon which an election contest may be predicated. *See generally Southall v. Billings,* 213 Tenn. 280, 375 S.W.2d 844, 848 (1963). The contestant may assert that the election is valid and that if the outcome is properly determined by the court, it will be apparent that the contestant rather than the contestee actually won the election. The proper relief in this event is a judgment declaring the contestant to be the winner. Alternatively, the contestant may claim that the election was null and void for some valid reason or reasons. The proper relief in that case is to order a new election.

### 3. Suit to be Declared the Winner

The requirements of a complaint seeking to have an election contestant declared the properly elected party were set out in *Shoaf v. Bringle,* 192 Tenn. 695, 241 S.W.2d 832 (1951), as follows:

> When we consider this case from the aspect that it was a valid election and that the petitioner, contestant, had received more votes than the contestee, it becomes necessary for the contestant to show on the face of his petition or complaint that the illegal votes cast should be thrown out and that when this is done that the votes that he received plus the legal votes of which he claims to have been deprived was greater than that of the contest. In making these allegations it [is] necessary that the contestant specifically point out each and every vote that was fraudulently or illegally cast on behalf of the contestant and against him and that the total of these votes when taken from the contestee and added to him would give him a majority.

*Shoaf,* 241 S.W.2d at 833. *See also Blackwood v. Hollingsworth,* 195 Tenn. 427, 260 S.W.2d 164, 166 (1953), in which this Court, relying on *Shoaf v. Bringle,* noted that to

sustain a claim of this sort, "the contestant must specifically point out the alleged illegal votes cast for the contestee."

■ In this case, Forbes has failed to make the allegations necessary to support a claim that she should be declared the winner. She states in her complaint only that "the wholesale disregard of the election laws of the State have resulted in irregularities which have rendered at least 300 absentee ballots in Hickman County and 561 absentee ballots in Williamson County illegal and that but for said irregularities that Forbes, and not the incumbent ("Bell"), is the winner." Nowhere in the complaint or amended complaint, however, is there any indication of the total number of votes which Forbes and Bell received from all four counties in the district. Because Forbes has not provided these figures, we have no way of determining whether the number of allegedly illegal votes equals or exceeds the margin of Bell's declared victory. This omission alone is fatal to Forbes's claim that she should be declared the duly elected winner.

■ Additionally, as noted above, to be declared the winner, an election contestant must "specifically point out each and every vote that was fraudulently or illegally cast on behalf of the contestee and against [the contestant]." *Shoaf* 241 S.W.2d at 833. Forbes has failed to identify any allegedly illegal votes counted for Bell and against her. Without this information, we simply have no basis upon which to declare Forbes the duly elected candidate. We must therefore conclude, as to this ground for relief, that the trial court was correct in dismissing the complaint for failure to state a cause of action.

### 4. Suit to Have the Election Declared Invalid

With respect to election contests seeking to have an election declared invalid, this Court has stated:

> Tennessee law empowers a court to void an election on two alternative, but closely related bases. First, "upon a sufficient quantum of proof that fraud or illegality so permeated the election as to render it

incurably uncertain, even though it can not be shown to a mathematical certainty that the result might have been different." *Emery v. Robertson County Election Comm'n*, 586 S.W.2d 103, 109 (Tenn.1979); *see also State ex rel Davis v. Kivett*, 180 Tenn 598, 177 S.W.2d 551 (1944); *Ingram v. Burnette* 204 Tenn 149, 316 S.W.2d 31 (1958). Secondly, where some ballots are found to be illegal, [and] the number of illegal votes cast is equal to, or exceeds the margin by which the certified candidate won. *Emery v. Robertson County Election Comm'n, supra; Hilliard v. Park*, 212 Tenn 588, 370 S.W.2d 829 (1963).

*Millar v. Thomas*, 657 S.W.2d 750, 751 (Tenn.1983).

First addressing Forbes's claim that the election should be declared void because of election irregularities that resulted in a number of allegedly illegal votes, we hold that she has failed to state a claim for the same reason that she failed to state a claim that she should be declared the winner of the election. The omission of a statement setting out the margin of Bell's victory precludes a grant of relief on this ground. Although requirements for declaring an election void based upon allegations of illegal voting are less stringent than are the requirements for declaring a contestant the victor, *Blackwood v. Hollingsworth, supra*, 260 S.W.2d at 166, those allegations must still be specific enough to establish that absent the allegedly illegal votes, the result of the election would have been different.

▮ In cases in which the contestant seeks to have the election declared void, the prescribed methodology is for the court to consider all of the illegal votes as having been voted one way (against the contestee) and then to ascertain whether the results of the election would thereby have been changed. *Ingram v. Burnette*, 204 Tenn. 149, 316 S.W.2d 31, 32 (1958); *see also Jared v. Fitzgerald*, 183 Tenn. 682, 195 S.W.2d 1 (1946). But even if we were to assume in this case that all of the allegedly illegal votes were cast for Bell, there is no basis in Forbes's complaint or amended

complaint upon which to say that the deduction of this number of votes from Bell's total would have produced a different result or rendered the outcome in doubt. Hence, we must hold as to this basis for contest that Forbes's pleadings have failed to state a claim for which relief can be granted.

▮ This ruling leaves Forbes with only one remaining avenue for relief, based on a claim that the election should be invalidated because it was so permeated with fraud and illegality that it cannot be said to fairly reflect the will of the voters. As to this ground, it is not necessarily fatal that the complaint does not specifically set out a sufficient number of illegal votes to change the result of the election or to make the result mathematically uncertain. *Southall v. Billings, supra*, 375 S.W.2d at 849. To void an election on this basis, however, the alleged wrong must be so gross and palpable a failure of the opportunity for a free and equal expression of the popular will, that the courts cannot permit the election to stand. *Barry v. Lauck*, 45 Tenn. 588 (1868). Honest mistakes or mere omissions, or irregularity in directory matters— even though gross—if not fraudulent, will not void an election unless they affect the result or at least render it uncertain. *Summitt v. Russell*, 199 Tenn. 174, 285 S.W.2d 137, 141 (Tenn.1955).

▮ Most election contests brought on this theory are based on claims of fraud or conspiracy, but the cases do recognize that statutory violations alone may be sufficient to render an election void. In reviewing a complaint that does no more than allege statutory violations, however, the focus of the court's inquiry must be kept in mind— that is, whether the violations are so serious as to thwart the will of the community upon a particular question. *Browning v. Gray*, 137 Tenn. 70, 191 S.W. 525, 526 (Tenn.1916) (citing *Barry v. Lauck, supra*, 45 Tenn. at 593). Toward that end, the *Browning* court quoted *Barry v. Lauck*, as follows:

"... Whatever statutory provisions are essential to the attainment of this end, are obviously indispensable; and whatev-

er precautions prescribed by statute against mistake or fraud are of such a nature that their omission in the particular instance has resulted in a fraud upon the electors, or has rendered the result of the election incurably uncertain, or the future omission of which, in the future, if permitted, must necessarily prove avenues of fraud, tend to prevent a fair exercise of the franchise, or to render elections insecure and uncertain, must be held to be a matter of substance, and essential to the validity of the proceeding.

*Browning* 137 Tenn. at 73, 191 S.W. 525.

It follows as a corollary that technical non-conformity with election statutes will not necessarily void an election, as "such strictness would lead to defeat rather than uphold, popular election, and can not be maintained." *McCraw v. Harralson* 44 Tenn. 34 (1867). Invalidating an election solely on the basis of technical omissions, much like failing "to cross a 't' or dot an 'i'," would effectively disenfranchise voters. *Foust v. May*, 660 S.W.2d 487, 490 (Tenn.1983).

We conclude that the irregularities alleged in this complaint, while not strictly technical in nature, do not fall far enough along the opposite end of the spectrum to subject the case to trial. We need only compare the nature and extent of the claims in other election contests to those alleged here, in order to demonstrate the basis for our conclusion.

In *Shoaf v. Bringle, supra,* for example, the complaint alleged a conspiracy between election commissioners and contestee Bringle "to fail to furnish sufficient ballots at the voting places in the county where [contestant Shoaf] was strong so that his supporters would not have an opportunity to vote for him." 241 S.W.2d at 834. Shoaf's complaint provided a detailed specification of how many voters were prevented from voting at named polling places as a result of the widespread ballot shortage. *Id.* In addition, the complaint alleged that election officials marked ballots "for numerous Negroes and other disqualified voters and voters from without the county for the contestee when there was nothing wrong with the person for whom they marked the ballot and who should under the law have marked his own ballot." *Id.* at 835. Finally, the complaint alleged instances of "[i]ntimidation and duress ... by some of the election officials ... to such an extent that if true these things would amount to a fraud and an illegal election at these places." *Id.* This Court concluded that the allegations, if proven, would establish that the election was "so permeated with fraud and illegality as to render the election void" and affirmed the trial court's decision overruling the contestee's demurrer. *Id.,* quoting *State ex rel. Davis v. Kivett, supra,* 177 S.W.2d at 555.

In *State ex rel. Davis v. Kivett,* the facts alleged in the complaint were equally compelling. The contestant, Davis, sued on the claim that contestee Kivett had conspired with county election commissioners and the local sheriff to form what was called the "Tax Payers Ticket" for the purpose of "steal[ing] the election." *Id.* at 552. According to the complaint, the commissioners appointed corrupt election officials and the sheriff sent in armed deputies to "intimidate the voters and control the election;" the contestant's poll watchers were forcibly ejected from various voting places; votes were bought at one precinct and people were "procur[ed] from Kentucky to vote at the election;" ballots were marked in another precinct for voters who were not disabled from marking their own ballots; absentee ballots were illegally cast in the name of soldiers entering the armed services; a large "slush fund" was collected and "used illegally for the purchase [in bulk] of poll tax receipts and for influencing voters;" and, finally, the commissioners failed to file a copy of the election returns with county officials and with the Secretary of State. *Id.* Allegations as to numbers of ballots, names, dates, precinct locations, and specific amounts of money were included in the complaint. The chancellor found, and the reviewing court agreed, that these allegations were sufficient to withstand demurrer. He concluded further that "there were so many violations of law and [so] many of the safeguards surrounding the

election were disregarded ... as to render the election incurably uncertain, thus rendering it impossible to purge the returns." *Id.* at 554. This Court affirmed the invalidation of the election.

The complaint in *Hollis v. Vaughan, supra,* 237 S.W.2d 952, also alleged massive irregularities in the election, resulting from a conspiracy by the election commission to take over "the management of the civil affairs of Lawrence County" and "to steal the election for [contestee] Hollis." *Id.* at 955. Again, as in *State ex rel. Davis v. Kivett,* there was "payment for blocks of poll taxes" by two commissioners; illegal printing of fraudulent ballots that omitted the names of some candidates; "gross violation of the law governing the registration of voters;" procurement of "alleged fictitious absentee ballots;" and a failure on the part of election commissioners to certify the election returns. *Id.* at 955–956. In addition, the election commissioners had arranged for 3,000 absentee ballots to be printed, even though the maximum number of legal absentee voters was no more than 400. Moreover, many of the absentee ballots that were cast in the election carried the forged signature of a notary public who had been dead for over a decade. *Id.* at 956. It is little wonder that the results of such an election were held invalid.

Finally, we take note of the complaint reviewed in *Southall v. Billings, supra,* 375 S.W.2d 844. It alleged fraud and intimidation in three precincts during a county-wide election for sheriff. Contestant Southall specified, for example, that at the Randolph precinct votes for contestee Billings were purchased by one A.B. Lott; that ballots were illegally marked for Billings by a Mr. Glass; that observers for Southall were "threatened and forced to retreat from the polling place;" and that when voters protested these actions, they were chased from the premises by a man named Norris Nix, who "ran at them with a 4 by 4 timber, cussing and swearing." *Id.* at 848, 849. Similar occurrences were alleged to have taken place at two other precincts, involving fraud and intimidation on the part of election officials. This Court held that the complaint was sufficient to withstand demurrer. *Id.* at 849.

In this case, by contrast, contestant Forbes alleges the existence of certain election irregularities which, if proven, we would certainly not condone, but which pale by comparison with the egregiousness of the conduct reflected in the cases summarized above.

 As to Williamson County, these allegations concern only the processing of absentee ballots. Forbes complains that they were not "counted first[,] prior to the closing of the polls as required by [T.C.A. § 2–6–117]" and that the election registrar improperly delayed certification of the absentee armed services votes beyond the date of the election, in violation of a requirement in T.C.A. § 2–6–106 that they be processed in the same manner as other absentee ballots. The short answer to these allegations is that they fail to indicate any irregularity, let alone a miscarriage of justice sufficient to invalidate all the absentee ballots cast in Williamson County and, by implication, to void the entire election. In the first place, T.C.A. § 2–6–117 does not require that absentee ballots be counted prior to the tally of regular ballots, but only that they be delivered to the polling places by 4:00 p.m. on election day. As for the armed services ballots, certification was held up pursuant to direction by the state election commissioner, as the result of a federal district court order. There is no allegation of tampering or other impropriety in connection with these ballots. With regard to Williamson County, then, we find that the complaint wholly fails to state a cause of action. Indeed, standing alone it borders on the frivolous. Hence, there was no error in the trial court's order that the Williamson County action be dismissed.

 The contestant's allegations as to Hickman County are concededly more substantial in nature but, in the end, no more availing. Taken verbatim from the complaint, they are, in pertinent part, as follows:

5. Forbes would show to the Court [that] the Hickman County Election Com-

mission ("Hickman Commission") violated the requirements of the Tennessee Election Code as follows:

a. As to East Elementary precinct: Hickman Commission utilized paper ballots in conjunction with the use of voting machines for other than write-in candidates voting procedures in violation of T.C.A. 2–7–117 and 2–7–119 which permits the use of paper ballots only when voting machines are out of order. Forbes would show all paper ballots at this voting precinct were illegally cast.

b. Alternatively, with respect to the paper ballot voting at East Elementary School, 153 paper ballots were cast, under conditions which violate the Election Code of the State of Tennessee rendering the entire paper ballot vote illegal. Specifically:

(i.) Hickman Commission permitted the use of unlocked ballot boxes in contravention of T.C.A. 2–7–109 which requires that ballot boxes be empty, and locked before the polling places open and remained locked until the voting has ended.

(ii.) Voters utilizing paper ballots were not provided a private voting compartment within which to cast their vote by paper ballot in contravention of T.C.A. 2–3–1087(b)(1)(c)(1).

(iii.) That election official(s) were observed opening the unlocked ballots boxes while voting was in progress prior to the closing of the polls and were observed removing an unknown amount of "pieces of paper".

(iv.) Voters who had voted by paper ballot would turn in paper ballots to an election official(s) rather than deposit the paper ballot in a locked ballot box in the voter's presence.

6. Forbes would further show the Court that numerous violations of the Tennessee Election Code exist with respect to the poll sheets, tally sheets and the manner in which the machine voting was carried out, specifically:

(i.) Poll sheets for Cobble and Nunnelly precincts were unsigned at the bottom in violation of T.C.A. 2–7–128.

(ii.) Poll sheets for Pinewood precinct (District II) and Nunnelly contained blank signature line spaces in violation of T.C.A. 2–7–112(a)(1).

(iii.) Tally sheets unsigned in violation of T.C.A. 2–7–123(b) for all precincts.

(iv.) Election officials at East Elementary School Precinct permitted lines of registered voters to accumulate as a result of a violation of T.C.A. 2–7–118 by not strictly enforcing the time limits for voters to use the voting machines thereby causing registered voters to leave the voting place without voting after a wait of at least one and a half to two hours.

(v.) Election officials at District VI permitted unauthorized "persons" to count ballots.

Even a broad reading of these allegations fails to show misconduct on the part of election officials sufficient to taint the Hickman County results, let alone the entire four-county election. Significantly, there is no allegation of fraud or conspiracy, and many of the alleged irregularities appear to constitute largely technical violations of the election laws, when viewed in context. The use of an unlocked ballot box, for example, would clearly contravene provisions in T.C.A. § 2–7–109. But Forbes does not charge fraud or tampering in this regard, nor claim that as a result of this irregularity any voter was deprived of voting. Similarly, the complaint alleges that voters using paper ballots were not provided with privacy, in violation of T.C.A. § 2–3–108(b)(1). That statute does set certain standards for the casting of a paper ballot, but again, there is no claim that as a result of the lack of "a private voting compartment," anyone casting a paper ballot was harassed, intimidated, or prevented from voting. Other alleged statutory violations appear even less weighty in terms of their effect on the integrity of the election. These include the appearance of blank signature lines on the poll sheets, which may have occurred because of a voter's inadvertence in skipping a line; the fact that voters may have been permitted to stay in the voting machines longer than the two minutes provided in T.C.A. § 2–7–118(a); and the failure to sign each tally sheet, in

violation of T.C.A. § 2–7–132(b), which has previously been held not to constitute grounds for invalidating an election, where the ballots have been preserved and delivered to the election commissioner. *Summitt v. Russell, supra,* 285 S.W.2d at 141.

Other allegations, as it turns out, do not even involve statutory violations. One example will suffice. The complaint alleges that voters improperly handed their paper ballots to an election official rather than depositing them in a locked ballot box. No code section is cited as being violated, but we note that T.C.A. § 2–7–114(c) requires a voter using a paper ballot to "state his name and present his folded ballot to the judge assigned to receive and deposit the ballots." There is no statutory requirement that the voter must actually place the ballot in the box.

In still other instances, the allegations in the complaint are simply too general in nature to withstand a motion to dismiss. The final allegation, for instance, that unnamed "[e]lection officials at District IV permitted unauthorized 'persons' to count ballots," is not only too vague to assert fraud, abuse of procedure, or taint of the vote; additionally, it fails to assert that the ballots were not also counted by *authorized* persons.

■ As noted above, our case law recognizes that statutory violations alone may be sufficient to invalidate an election, especially where they thwart those statutory provisions "designed to (1) prevent undue influence or intimidation of the free and fair expression of the will of the electors or (2) ensure that only those who meet the statutory requirements for eligibility to vote, cast ballots." *Emery v. Robertson County Election Commission,* 586 S.W.2d 103, 109 (Tenn.1979) (gross mishandling of absentee ballots held to have presented opportunity for fraud; election results purged). But not every irregularity, or even a combination of irregularities, will necessitate the invalidation of an election. *See, e.g. Lanier v. Revell,* 605 S.W.2d 821 (Tenn.1980) (technical statutory violations not amounting to fraud or the casting of illegal ballots held insufficient to void results); *Payne v. Ramsey,* 591 S.W.2d 434

(Tenn.1979) (same), *Barham v. Denison,* 159 Tenn. 226, 17 S.W.2d 692 (1929) (same).

■ Moreover, courts should be appropriately reluctant to take the step of declaring an election invalid. As we noted in *Ingram v. Burnette,* 204 Tenn. 149, 316 S.W.2d 31, 33 (1958):

> It is not an easy task for the courts of our state to set aside and declare elections void. The Courts appreciate the fact that honest mistakes will be made in the conduct of elections. The whole object of our election laws passed by the Legislature over the years has been with the idea of maintaining fair and honest elections. So it is if mistakes have been made and even though fraudulent ballots have been cast, if the Courts can purge the illegal ballots or fraudulent ballots without affecting the result of the election, this will be done.

In this case, had the complaint been properly drawn, the purging by the trial court of a specific number of paper ballots in a particular precinct in Hickman County might well have been appropriate. But in her complaint, the contestant has failed to demonstrate that a purge of those ballots would have changed the result of the election or rendered its outcome uncertain. We thus have no choice but to conclude that the chancellor correctly dismissed the complaint for failure to state a claim. We firmly reject any contention that the allegations of the complaint are sufficient to show, district-wide, that the election was so permeated by fraud or illegality as to render the results incurably uncertain or to thwart the will of the electorate.

The judgment of the trial court is affirmed. Costs will be taxed to the appellant, Jane B. Forbes.

REID, C.J., and DROWOTA, O'BRIEN, ANDERSON, JJ., concur.