**Bobby REINHARDT**

v.

**Wanda NEAL, et al.**

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

May 15, 2007 Session.

June 11, 2007.

Permission to Appeal Denied by Supreme Court Oct. 22, 2007.

Paul Whetstone, Morristown, Tennessee, for the Appellant, Bobby Reinhardt.

Frank P. Cantwell, Jr., Morristown, Tennessee, for the Appellees, Wanda Neal, in her official capacity as Hamblen County Administrator of Elections, and the Hamblen County Election Commission, composed of: C. Dwaine Evans, Chairman, Randall Johnson, Gail Bruce, Lyle Doty, and Judy Blackburn.

## OPINION

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and SHARON G. LEE, J., joined.

This is an election contest case brought by Bobby Reinhardt ("Reinhardt") seeking to have the election for Hamblen County Commissioner, District 4, set aside on the basis that there were two illegal votes and those two votes were equal to the margin by which his opponent won the election. Following a hearing and a recount, Reinhardt's opponent was declared the winner by the Trial Court. Reinhardt appeals, and we affirm.

### Background

Reinhardt ran for re-election as a Hamblen County Commissioner, District 4, during the August 3, 2006, election. Rein-

hardt lost by two votes and shortly thereafter filed this lawsuit.[1] The issues presented in this case are rather narrow and the underlying facts are, in large part, undisputed.

At the initial hearing on Reinhardt's complaint seeking a new election, the Trial Court determined that, based on the testimony and evidence presented at the hearing, it was appropriate to order a recount. With regard to the specific claim by Reinhardt, the Trial Court summarized the issue and its conclusion as to that issue as follows:

Petitioner Reinhardt further seeks [an] order voiding the election. One of his contentions is that the actions of the election commission during early voting violated the provisions of Tennessee Code Annotated § 2–6–104. Tennessee Code Annotated § 2–6–104 provides that a:

county election commission shall choose *one (1)* of the following options for its method of early voting:

(1) Place all races on machine ballot;

(2) Place some of the races on a machine ballot and part of the races on a paper ballot; or

(3) Place all races on a paper ballot.

*Id.*

All parties agree that, during early voting, two persons were allowed to vote on paper ballots while all others utilized the voting machines. The Petitioners contend that the provisions of the statute require that all voters should vote in the same way: either, all should vote on paper, all should vote on machine, or all should vote on machine for specific elections and all should vote

---

1. Edwin Osborne also lost in his bid for re-election as a Hamblen County Commissioner and also was a plaintiff in this lawsuit. Mr. Osborne has not appealed from the Trial Court's decision and, therefore, the Trial Court's judgment upholding the election results is final as to Mr. Osborne.

on paper for others. The Respondents assert that the actions of the election commission were in compliance with the statute. We have noted that the provisions of T.C.A. § 2–6–101 provides that "To prevent fraud in an election, strict compliance with the provisions of this chapter is required." We have also noted that the provisions of T.C.A. § 2–6–104 allow only one option to election commissions where strictly considered the election commission adopted both option (1) and option (3), allowing some voters to vote on paper and some to vote on machine. We do not find fraud here, but we note the stated purpose of the law is to prevent fraud. The matter is particularly sensitive here because Petitioner Reinhardt lost by only two votes, which, unquestionably is the same number of paper ballots allowed during the early voting. Thus, had the election commission determined not to allow the two paper ballot[s] to be counted, and had those two voters both selected the opportunity to vote for Petitioner Reinhardt's opponent, there was a tie vote.

We recognize that the interpretation of T.C.A. § 2–6–104 is a matter on which reasonable minds may differ. We also recognize that the better practice is strictly to adhere to the terms of the statute. Nonetheless, we do not find that the election should be voided because of this issue.... (emphasis in the original)

The Trial Court appointed a Special Master to conduct the recount. The Special Master determined that Reinhardt had received 158 votes and his opponent, Mr. Reese Sexton, had received 160 votes. The Trial Court then entered an order confirming the Special Master's Report and entered a final judgment declaring Mr. Sexton the winner. This appeal followed.

Reinhardt raises one issue on appeal, which we quote, omitting only a footnote:

Whether the Chancery Court erred in refusing to invoke "strict compliance" with T.C.A. § 2–6–104 and thereby declare the Appellant's race for Hamblen County Commissioner, District 4, either void or a mathematical tie.

### Discussion

The factual findings of the Trial Court are accorded a presumption of correctness, and we will not overturn those factual findings unless the evidence preponderates against them. *See* Tenn. R.App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. Of Educ.*, 58 S.W.3d 706, 710 (Tenn.2001).

The pertinent statutes are Tenn.Code Ann. §§ 2–6–101 (Supp.2006), 2–6–104(a) (2003), 2–6–105 (2003), and 2–7–116(a) & (b) (Supp.2006). These statutes provide as follows:

§ **2–6–101. Purpose of chapter and part-Construction.**—(a) The purpose of this chapter is to provide a means for qualified voters to cast their votes when they would otherwise be unable to vote.

(b) The purpose of this part is to establish an early voting period when eligible registered voters may vote before an election at the county election commission office or another polling place appropriately designated by the county election commission.

(c) To prevent fraud in an election, strict compliance with the provisions of this chapter is required.

§ **2–6–104. Voting machines for early voting.**—(a) A county election

commission may use voting machines for early voting. The county election commission shall choose one (1) of the following options for its method of early voting:

(1) Place all races on a machine ballot;

(2) Place some of the races on a machine ballot and part of the races on a paper ballot; or

(3) Place all races on a paper ballot....

§ 2–6–105. Voter Assistance—Attestation.—Persons voting early are entitled to the same assistance in voting they would be entitled to if they appeared to vote on election day. The procedures under § 2–7–116 govern how assistance should be given.

§ 2–7–116. Assistance to disabled, illiterate or blind voters.—Certified record.—(a)(1) A voter who claims, by reason of illiteracy or physical disability other than blindness, to be unable to mark the ballot to vote as the voter wishes and who, in the judgment of the officer of elections, is so disabled or illiterate, may:

(A) Where voting machines are used, have the ballot marked on a voting machine or on a paper ballot subject to the provisions of § 2–7–117 by any person of the voter's selection, or by one of the judges of the voter's choice in the presence of either a judge of a different political party or, if such judge is not available, an election official of a different political party; or

(B) Where voting machines are not used, have the ballot marked by any person of the voter's selection or by one of the judges of the voter's choice in the presence of either a judge of a different political party or, if such judge is not available, an election official of a different political party.

(2) The officer of elections shall keep a record of each such declaration, including the name of the voter and of the person marking the ballot and, if marked by a judge, the name of the judge or other official in whose presence the ballot was marked. The record shall be certified and kept with the poll books on forms to be provided by the coordinator of elections.

(b)(1) A voter who claims, by reason of blindness, to be unable to mark the ballot to vote as the voter wishes and who, in the judgment of the officer of elections, is blind, may:

(A) Where voting machines are used, have the ballot marked on a voting machine or on a paper ballot subject to the provisions of § 2–7–117 by any person of the voter's selection or by one of the judges of the voter's choice in the presence of either a judge of a different political party or, if such judge is not available, an election official of a different political party; or

(B) Where voting machines are not used, have the ballot marked by any person of the voter's selection or by one of the judges of the voter's choice in the presence of either a judge of a different political party or, if such judge is not available, an election official of a different political party.

(2) The officer of elections shall keep a record of each such declaration, including the name of the voter and of the person marking the ballot and, if marked by a judge, the name of the judge or other official in whose presence the ballot was marked. The record shall be certified and kept with the poll books on forms to be provided by the coordinator of elections ...

In *Forbes v. Bell,* 816 S.W.2d 716 (Tenn. 1991), our Supreme Court discussed at length the procedures for having an election set aside pursuant to Tenn.Code Ann. § 2–17–101, *et seq.* According to *Forbes,* there are two grounds upon which an election contest can be based. The first ground involves a claim that the election was valid, but that the person contesting the election would be the winner if the outcome was properly determined. *Id.* at 719. The second ground is a claim that the election was null and void. *Id.* The proper remedy in the second situation, if the contestant is successful in court, is to order a new election. In the present case, Reinhardt does not allege that he should be declared the winner. Rather, he is pursuing the second ground by claiming the election should be set aside and a new election should be held.

The *Forbes* Court then explained that there were two ways a contestant could seek to have an election voided. The first basis was "upon a sufficient quantum of proof that fraud or illegality so permeated the election as to render it incurably uncertain, even though it can not be shown to a mathematical certainty that the result might have been different." *Id.* at 719–20 (quoting *Millar v. Thomas,* 657 S.W.2d 750, 751 (Tenn.1983)). The second manner in which to have an election declared invalid is "where some ballots are found to be illegal, [and] the number of illegal votes cast is equal to, or exceeds the margin by which the certified candidate won." *Id.* at 720 (quoting *Millar,* 657 S.W.2d at 751). *See also Emery v. Robertson County Election Comm'n,* 586 S.W.2d 103, 108–09 (Tenn.1979)("The reported decisions of this State uniformly authorize the courts to void an election where the evidence reveals that the number of illegal ballots cast equals or exceeds the difference between the two candidates receiving the most votes. The rule is based upon the rationale that if all of the illegal votes had been cast for the unsuccessful candidate the result would have been changed."). In the present case, Reinhardt is pursuing only the second approach by claiming there were two illegal votes cast and that number of illegal votes is equal to the margin by which his opponent won the election. Reinhardt must, therefore, prove that a sufficient number of ballots were "illegal." [2]

As set forth above, the relevant statute requires all persons who vote in a particular race to vote the same way, either by machine or paper ballot. The parties on appeal agree that this requirement was not complied with when two paper ballots were cast in the early voting while all other voters voted by machine. However, this does not end our inquiry because Tenn.

---

**2.** The *Forbes* Court noted that statutory violations alone could be sufficient to render an election void if they "are so serious as to thwart the will of the community upon a particular question." *Forbes,* 816 S.W.2d at 720 (citing *Browning v. Gray,* 137 Tenn. 70, 191 S.W. 525, 526 (Tenn.1916)). The *Forbes* Court then stated:

It follows as a corollary that technical non-conformity with election statutes will not necessarily void an election, as "such strictness would lead to defeat rather than uphold, popular election, and can not be maintained." *McCraw v. Harralson* 44 Tenn. 34 (1867). Invalidating an election solely on the basis of technical omissions, much like failing "to cross a 't' or dot an 'i'," would effectively disenfranchise voters. *Foust v. May,* 660 S.W.2d 487, 490 (Tenn. 1983).

*Forbes,* 816 S.W.2d at 721. Based on our reading of *Forbes,* it does not appear that the "technical non-conformity with election statutes" exception was extended to cases where the contestant alleges that there were illegal votes and the number of illegal votes was equal to or exceeded the margin of victory, thereby requiring the trial court to ascertain if certain votes actually should be deemed "illegal".

Code Ann. § 2–7–116 authorizes the use of paper ballots when a voter needs assistance as set forth in that statute, even if all other voters vote by machine. In other words, if a voter needed assistance as described in Tenn.Code Ann. § 2–7–116 and voted by paper ballot while all other voters voted by machine, then that particular paper ballot does not constitute an "illegal" vote. Therefore, in order for Reinhardt to prove that there were two illegal votes, he must demonstrate two things. First, that the two voters voted by paper ballot when all others voters voted by machine; and second, that these two voters did not use a paper ballot because they were in need of assistance pursuant to Tenn.Code Ann. § 2–7–116.

The parties on appeal agree that defendant Wanda Neal, the Hamblen County Administrator of Elections, testified at the court hearing and that the two paper ballots were the subject of at least some of the testimony at the hearing. This Court has not been provided with a transcript or statement of the evidence setting forth Neal's testimony, or the testimony of any of the other witness who testified at that hearing. Without a transcript or statement of the evidence, we have no way of knowing if the two voters who used a paper ballot did so because they needed assistance as permitted. In the absence of a transcript or a statement of the evidence prepared in accordance with Tenn. R.App. P. 24(c), we must presume that the evidence supports the Trial Court's findings and ultimate conclusion that Reinhardt had not proven that these two votes were illegal such that a new election should be ordered. *See, e.g., Sherrod v. Wix,* 849 S.W.2d 780, 783 (Tenn.Ct.App.1992)("This court cannot review the facts de novo without an appellate record containing the facts, and therefore, we must assume that the record, had it been preserved, would have contained sufficient evidence to support the trial court's factual findings.").

In his brief on appeal, Reinhardt states that the reasons no transcript was filed were because he did not believe it was pertinent to resolution of the appeal and because the "nature of this appeal compels the Appellant to proceed as quickly as possible; time is most certainly of the essence." We agree with Reinhardt insofar as he claims that time is of the essence in election contest cases. These cases must be resolved as quickly as possible. In all fairness to Reinhardt, we point out that during oral argument, Reinhardt offered to have the testimony from the hearing transcribed and to supplement the technical record on appeal with the transcript. This motion was opposed. We denied the motion because it simply came too late. If we now allowed the transcript to be filed, we, in fairness to both sides, then would have been required to restart the briefing process so that this new and potentially dispositive testimony properly could be addressed in the briefs of both parties, and then schedule a second oral argument. This would improperly delay resolution of this case because, as Reinhardt so correctly stated, "time is most certainly of the essence" in an election contest case.

The judgment of the Trial Court upholding the election results is affirmed.

### Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. Costs on appeal are taxed to the Appellant, Bobby Reinhardt, and his surety.