FILED
01/11/2019
Clerk of the
Appellate Courts

# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
December 5, 2018 Session

## FRATERNAL ORDER OF POLICE ET AL. v. METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE ET AL.

### Appeal from the Circuit Court for Davidson County
No. 18C2158     Kelvin D. Jones, Judge

_____

### No. M2018-01717-COA-R3-CV

_____

The Election Commission of the Metropolitan Government of Nashville and Davidson County, Tennessee used the August 4, 2016 election as the proper election for determining the appropriate number of signatures needed on the petition to hold a referendum on whether to create a police oversight board.  Certain individuals and the Fraternal Order of Police ("FOP") disagreed and sought a writ of certiorari. The trial court agreed with the election commission and affirmed its action.  The individuals and the FOP appealed.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

Austin Lenoy McMullen and David Louis Raybin, Nashville, Tennessee, for the appellants, Fraternal Order of Police,  Matthew Dean Boguskie, Harold Milton Burke, III, James Anthony Gafford, Noble Taylor, and Robert Alan Young.

Lora Barkenbus Fox and Catherine Jane Pham, Nashville, Tennessee, for the appellees, Davidson County Election Commission and Metropolitan Government of Nashville and Davidson County.

Jamie Ray Hollin and Daniel Alexander Horwitz, Nashville, Tennessee, for the appellee, Community Oversight Now.

**OPINION**

On August 1, 2018, Community Oversight Now ("CON") filed with the Metropolitan Clerk a petition for a referendum to be placed on the November 6, 2018 ballot containing a proposal to amend the Metro charter to establish a police oversight board. Pursuant to section 19.01 of the Metro charter, such a petition must be "signed by ten (10) per cent of the number of the registered voters of Nashville-Davidson County voting in the preceding general election." The Davidson County Election Commission staff began analyzing the 8,269 signatures on CON's petition. The commission met on August 15, 2018, and the staff reported that it had reviewed 6,491 of the signatures; 4,801 signatures were verified and 1,690 had been rejected. The commission determined that the preceding general election was the August 4, 2016 election in which 47,074 voters cast their ballots; thus, 4,708 signatures would constitute ten percent. The commission voted to accept the verified signatures as meeting the requirements of the Metro charter.

The FOP and individual current and retired police officers filed a petition for writ of certiorari and supersedeas and writ of mandamus from the decision of the Davidson County Election Commission in circuit court[1] challenging the validity of the referendum based upon the theory that the referendum petition did not contain enough verified signatures. By agreed order, CON was permitted to intervene. The circuit court expedited the proceedings and, after a hearing on September 14, 2018, the court entered a final order on September 19, 2018, in which it agreed with the election commission's determination that the preceding general election was held on August 4, 2016, and affirmed the decision of the commission. CON filed a motion to alter or amend, which the circuit court denied on September 21, 2018. The FOP appealed. Post-appeal motions will be discussed below.

STANDARD OF REVIEW

Review of the election commission's decision is by common law writ of certiorari. *McFarland v. Pemberton*, 530 S.W.3d 76, 104 (Tenn. 2017).

> Reviewing courts may grant relief only when the board or agency whose decision is being reviewed has exceeded its jurisdiction or has acted illegally, arbitrarily, or fraudulently.
>
> Review under a common-law writ of certiorari does not extend to a redetermination of the facts found by the board or agency whose decision is being reviewed. The courts may not (1) inquire into the intrinsic correctness

---

[1] The circuit court has concurrent jurisdiction with the chancery court over petitions of certiorari concerning an order or judgment of a board or commission operating under state law. *See* Tenn. Code Ann. § 27-9-103.

of the decision, (2) reweigh the evidence, or (3) substitute their judgment for that of the board or agency. However, they may review the record solely to determine whether it contains any material evidence to support the decision because a decision without evidentiary support is an arbitrary one.

*Leonard Plating Co. v. Metro. Gov't of Nashville & Davidson Cnty.*, 213 S.W.3d 898, 903-04 (Tenn. Ct. App. 2006) (internal citations and footnotes omitted).

ANALYSIS

Motion to Dismiss

The FOP filed a motion to expedite the appeal and a reach-down motion in the Supreme Court in an attempt to have the case resolved prior to the November 6 election. On Sept. 26, 2018, this Court granted an expedited schedule that would set the oral argument for after the election, stating:

The election is now less than forty-five days away, and the military and overseas ballots have already been mailed. Absentee ballots must be mailed no later than October 7, 2018, and early voting begins on October 17, 2018. Moreover, Metro concedes that the appeal will not be moot after the election and that the results of the referendum can be held void if the appellants ultimately prevail on appeal. Given that ballots have already been mailed, the impracticality of obtaining a record and briefs in such a short period of time, and the availability of an adequate remedy after the election, it is not feasible for this court to render a decision prior to the November 6, 2018 election. Nevertheless, the court finds it to be in the interest of the public and the parties to shorten the schedules within which the parties and the trial court clerk are to fulfill their respective obligations so this court may render a decision as soon as is reasonably possible.

On September 27, 2018, the Supreme Court denied the reach-down motion. On October 9, 2018, this Court denied CON's motion to dismiss the appeal as moot, "without prejudice to the parties addressing the same issues in their briefs." On October 14, 2018, CON filed a Tenn. Rule App. P. 10 motion asking the Tennessee Supreme Court:

To vacate the Court of Appeals' September 26, 2018 Order holding that "the appeal will not be moot after the election and that the results of the referendum can be held void . . . , and . . . To order the Court of Appeals to adjudicate Community Oversight Now's Motion to Dismiss the instant appeal for loss of subject matter jurisdiction before the November 6, 2018 election."

- 3 -

The motion was promptly denied by the Supreme Court on October 16, 2018.

On the afternoon of December 4, 2018, the day before oral argument, CON filed another motion to dismiss. This one was based on the proposition that the instant action is an election contest which must be filed in chancery court within five days of the certification of the election results, which occurred on November 26, 2018. Oral argument was heard the next day. The Court gave Metro five days to respond to CON's motion and the FOP five days after that to respond.

Metro's response is surprising. As a matter of background, in response to the first motion to expedite referenced above, Metro argued that the case should not be expedited: "there is no value in expediting the case – it can be resolved during and even after the November 6, 2018 election without harm to Petitioners or the public. In contrast, rushing the case, and causing any disruption in the election, will cause substantial harm to the public." Metro *expressly* stated to this court:

> There is no harm in having the public go ahead and vote on the referendum, now that the election process has begun. If this Court decides that there were an insufficient number of signatures to place the proposed charter amendment on the ballot, there is a remedy - the results can be treated as a nullity . . . .
>
> Petitioner's citations to cases considered moot are not relevant to this case . . . . In this case, the FOP et al. have brought their case before the election is to be held and have not waited many months before asking the case to be expedited. There is no reason that this case cannot be resolved in due course by the appellate courts.[2]

For these reasons, Respondents ask that this motion to expedite be denied.

In contrast, now, post-election, when CON seeks to dismiss the case for failure to file an election contest, Metro reverses direction like a boomerang, and says, in effect, "This case is really an election contest to void the election. It should be brought under Tenn. Code Ann. § 2-17-101(b)!" Suddenly, mootness is relevant, and the concerns about disrupting the election have been consigned to the dustbin of history.[3]

In its response, the FOP argues that challenges to what should be on the ballot are properly brought before the election, citing *Barrett v. Giles County*, No. M2010-02018-

---

[2] Metro made the same response to the reach-down motion filed in the Supreme Court.

[3] Metro's one-paragraph response was filed on December 12, 2018 and is devoid of legal citation except for the quotation from Tenn. Code Ann. § 2-17-101(b).

COA-R3-CV, 2011 WL 4600431 (Tenn. Ct. App. Oct. 5, 2011). CON filed a reply to the FOP's response maintaining that the claim that the election must be invalidated "constitutes an election contest," and that it is too late to file an election contest.

The court in *Barrett* observed that:

> "In *Forbes v. Bell*, 816 S.W.2d 716 (Tenn. 1991), our Supreme Court discussed at length the procedures for having an election set aside pursuant to Tenn. Code Ann. § 2-17-101, *et seq*. The *Forbes* Court began by observing that there are two grounds upon which an election contest can be based. The first ground involves a claim that the election was valid, but that the contestant, rather than the contestee, would be the winner if the outcome was properly determined. *Id*. at 719. If the contestant is successful in court, the proper relief in this type of case is a judgment declaring the contestant the winner. The second ground is a claim that the election was null and void. *Id*. The proper remedy in this second situation, if the contestant is successful in court, is to order a new election."

*Barrett*, 2011 WL 4600431, at \*2 (quoting *Stuart v. Anderson Cnty. Election Comm'n*, 237 S.W.3d 297, 303 (Tenn. Ct. App. 2007)). The first ground does not apply. As for the second ground, Tennessee case law is that an election may be voided by "(1) fraud and illegality rendering the election uncertain or (2) enough illegal ballots having been cast to call the election into doubt." *Barrett*, 2011 WL 4600431, at \*3; *see also Forbes v. Bell*, 816 S.W.2d 716, 719-20 (Tenn. 1991) (quoting *Millar v. Thomas*, 657 S.W.2d 750, 751 (Tenn. 1983)). This case does not involve allegations of illegal ballots or fraud. This matter is not an election contest.[4]

Challenges to what should be on the ballot "should ordinarily be brought before the election – preferably in time for the issue to be resolved before the ballots have to be printed and before the start of absentee and early voting." *Barrett*, 2011 WL 4600431, at \*4. This case was filed before the election, going through an administrative process with the election commission, and a circuit court challenge by writ of certiorari before

---

[4] Further support for this matter not being an election contest is found in the language of Tenn. Code Ann. § 2-17-101(b) itself:

> The incumbent office holder and any candidate for the office may *contest the outcome of an election* for the office. Any campaign committee or individual which has charge of a campaign for the adoption or rejection of a question submitted to the people may *contest the election* on the question.

(emphasis added). This case is not a challenge to the outcome of an election. It is a challenge regarding what should be on the ballot, filed before the election.

appealing to this Court. Even then, the FOP sought to expedite this case before this Court and the Tennessee Supreme Court. We do not know what more the FOP could have done to advance this matter. To now require them to file a new lawsuit to litigate once again what has already been decided by the election commission and the circuit court, or to hold that they failed to file such a lawsuit and therefore cannot have heard the claim that they have so earnestly pressed forward, would be an injustice and not in the public interest.

The motion to dismiss is denied.

## Standing

In this case, an examination of standing begins with Tenn. Code Ann. § 27-9-101: "Anyone who may be aggrieved by any final order or judgment of any board or commission functioning under the laws of this state may have the order or judgment reviewed by the courts, where not otherwise specifically provided, in the manner provided by this chapter." Our Supreme Court has held:

> In order to have standing to file a petition for a common-law writ of certiorari, the party filing the petition must demonstrate that it is "aggrieved" by the decision sought to be reviewed. For the purposes of Tenn. Code Ann. § 27-9-101, to be "aggrieved," a party must be able to show a special interest in the agency's final decision or that it is subject to a special injury not common to the public generally. The party must also show that it was a party to the agency proceedings sought to be reviewed.

*Wood v. Metro. Nashville & Davidson Cnty. Gov't*, 196 S.W.3d 152, 158 (Tenn. Ct. App. 2005) (citations omitted). The individual appellants and the FOP participated in the proceedings before the election commission and are undoubtedly affected by the agency's decision to place the referendum on the ballot in a manner singularly different from the effect on the general public. They have standing.

## Mootness

Metro and CON argue that this case is now moot because the election has taken place. At the risk of being repetitious, we must again point out that, in response to the first motion to expedite, Metro argued that the case should not be expedited: "there is no value in expediting the case – it can be resolved during and even after the November 6, 2018 election without harm to Petitioners or the public. In contrast, rushing the case, and causing any disruption in the election, will cause substantial harm to the public." At this juncture, Metro cannot take the opposite position.

As stated earlier, we recognized in this Court's order of September 26, 2018, that an appellate decision could not be rendered before the election. In particular, we stated:

> Given that ballots have already been mailed, the impracticality of obtaining a record and briefs in such a short period of time, and the availability of an adequate remedy after the election, it is not feasible for this court to render a decision prior to the November 6, 2018 election. Nevertheless, the court finds it to be in the interest of the public and the parties to shorten the schedules within which the parties and the trial court clerk are to fulfill their respective obligations so this court may render a decision as soon as is reasonably possible.

Implicit in our order is a determination that, under the peculiar circumstances of this case, the matter would not be moot. The resolution of this matter would go forward. We adhere to this decision.[5]

## Interpretation of Charter Provision

The FOP challenges the number of signatures on the petition. The relevant portion of the Metropolitan Charter is § 19.01, which states in pertinent part:

> This Charter may be amended subsequent to its adoption in the following manner:
>
> An amendment or amendments may be proposed . . . (2) upon petition filed with the metropolitan clerk, signed by ten (10) per cent of the number of the registered voters of Nashville-Davidson County voting in the preceding general election, the verification of the signatures to be made by the Davidson County Election Commission and certified to the metropolitan clerk. Such resolution or petition shall also prescribe a date not less than eighty (80) [days] subsequent to the date of its filing for the holding of a referendum election at which the electorate of the metropolitan government will vote to ratify or to reject the amendments proposed.

The question is, which prior election is the "preceding general election"?

---

[5] As previously noted, on October 12, 2018, CON filed a Tenn. R. App. P. 10 application asking the Supreme Court to vacate the Court of Appeals' September 26, 2018 Order and to order the Court of Appeals to decide CON's motion to dismiss. Two days later, the Supreme Court denied the application. Based on the language of Tenn. R. App. P. 10(a), one may infer that the Supreme Court determined that the Court of Appeals had not "so far departed from the accepted and usual course of judicial proceedings as to require immediate review," or that the extraordinary appeal was not necessary "for complete determination of the action on appeal."

- 7 -

The Tennessee Supreme Court has addressed the meaning of the term "general election," as used in the Metropolitan Charter. In *Wallace v. Metropolitan Government of Nashville & Davidson County*, 546 S.W.3d 47, 55 (Tenn. 2018), the Court examined the terms "general metropolitan election," and "general election," which are both found in the Metropolitan Charter:

> We do not read the use of the distinct phrases "general metropolitan election" and "general election" to be merely accidental. Rather, we view the two phrases to have been intentionally and thoughtfully employed to refer to different elections. The former phrase refers to the particular general election at which the Mayor, Vice Mayor, Councilmen-at-Large, and District Councilmen are elected in August of each fourth odd-numbered year, beginning in 1971, as called for in section 15.01 of the Charter. In contrast, the latter phrase refers more broadly to any municipal general election, including but not limited to general metropolitan elections. In other words, "general metropolitan elections" are one unique type of the broader category of municipal "general elections." All municipal "general elections," however, are not "general metropolitan elections."

The Supreme Court in *Wallace* also explained the case of *State ex rel. Wise v. Judd*, 655 S.W.2d 952 (Tenn. 1983). The *Wallace* court stated:

> the issue in *Wise* was whether the phrase "preceding general election" as used in section 19.01 of the Charter is limited to a municipal general election or includes a state or federal general election. There was in *Wise* no dispute that both the August 1979 "general metropolitan election" and the August 1982 "general election" were municipal general elections which would qualify for purposes of section 19.01. The question was whether the November 1982 state general election also would qualify. Our holding in *Wise* was that the phrase "preceding general election" as used in section 19.01 of the Charter refers to *municipal* general elections, not to *state or federal* general elections.

*Id*. at 57-58 (citations and footnote omitted). The *Wise* opinion determined that the term "preceding general election" in § 19.01 of the Metropolitan Charter referred to the previous metropolitan general election rather than a state general election, namely the August 1982 election. *Wise*, 655 S.W.2d at 953.

Several elections have been proposed as the "preceding general election" in this case. The most recent election is the May 24, 2018 election for mayor and one district council member. This was a special election to fill vacancies, however, not a general election. *See Wallace*, 546 S.W.3d at 56. Thus, the May 24, 2018 election cannot be used to determine the number of signatures needed for the petition.

The November 2016 election has also been suggested as being the appropriate "preceding general election." However, no metro offices were on the ballot. State and federal offices were on the ballot, as well as city commissioners for Belle Meade, Forest Hills and Goodlettsville. *Wise* held that "the phrase 'preceding general election' as used in section 19.01 of the Charter refers to *municipal* general elections, not to *state or federal* general elections." *Wallace*, 546 S.W.3d at 58 (citing *Wise*, 655 S.W.2d at 953). Thus, the November 2016 election cannot be used to determine the number of signatures needed for the petition.

Metro and CON contend, and the election commission and trial court found, that the August 4, 2016 election is the one to use. FOP disagrees. The issue turns on whether the election for Metropolitan Assessor of Property is a state or a municipal general election.

A metropolitan government is a consolidation of the functions vested in a municipal corporation and the county in which it lies. Tenn. Const., Art. XI, Sec. 9, Para. 9; Tenn. Code Ann. § 7-2-108(a)(1), (16). In the course of this consolidation, the charter may alter or even abolish "city and county offices, departments, boards, commissions, agencies and functions, except where otherwise provided in . . . [Tenn. Code Ann. Title 7, Ch. 1-6] or prohibited by the Constitution of Tennessee." Tenn. Code Ann. § 7-2-108(a)(16). Indeed, our Supreme Court has held that the constitutional offices found in Article 7, Section 1 of the Tennessee Constitution cannot be abolished. *Metro. Gov't of Nashville & Davidson Cnty v. Poe*, 383 S.W.2d 265, 268 (Tenn. 1964). Thus, the office of assessor of property cannot be abolished.

The Metropolitan Charter retains the office of assessor of property, but calls the office the metropolitan tax assessor. Metro Charter, § 8.113. Title changes are permissible. Tenn. Code Ann. § 7-2-108(a)(14). Changes in duties are also permissible. *Winter v. Allen*, 367 S.W.2d 785, 789-90 (Tenn. 1963) (upholding the transfer of the duty to assess merchants' ad valorem taxes from the county court clerk to the metropolitan tax assessor). The county official becomes a metropolitan government official. *Poe*, 383 S.W.2d at 277 ("The Sheriff is a Metropolitan officer and as such he is bound by the functional, budgetary and purchasing provisions of the Charter . . . .").

The FOP maintains that the election for assessor is a state election, based in part on the fact that in Title 2 of the Tennessee Code Annotated, "state election" is defined as "an election held to: . . . Choose state, county or district officers." Tenn. Code Ann. § 2-1-104(a)(28)(B). This definition is limited to Title 2, and even then just applies "unless a different meaning is clearly intended." Tenn. Code Ann. § 2-1-104(a). No definitions of "municipal election," "municipal general election," "metropolitan election," or "metropolitan general election," are found in Tenn. Code Ann. § 2-1-104. In the context of Title 2, it is evident that "state election" is used to distinguish certain elections from a "federal election." *See* Tenn. Code Ann. § 2-8-108(b) ("All election documents

pertaining to a federal election shall be preserved by the county election commission for twenty-two (22) months."); Tenn. Code Ann. § 2-10-119 ("Transfers of funds or assets from a candidate's campaign committee or account for a federal election to a political campaign committee of or for such candidate for public office in this state is prohibited.").

If a sheriff is a "Metropolitan officer," *Poe*, 383 S.W.2d at 277, then it follows logically that the assessor of property is as well. Furthermore, the Metropolitan Charter designates the assessor as such. Metro Charter, § 8.113 ("The county tax assessor, elected for a term of four (4) years and provided for by general law in Tennessee Code Annotated, sections 67-1-502 to 67-1-505, inclusive, shall be the metropolitan tax assessor."). Because the assessor is a metropolitan officer, the general election for the assessor is a metropolitan general election.

The FOP also contends that the election for assessor is a partisan election and cannot be a municipal election because "municipal elections shall be nonpartisan." Tenn. Code Ann. § 2-13-208(a). However, Tenn. Code Ann. § 2-13-208(b) specifically addresses metropolitan governments, stating:

> In any county having a metropolitan form of government, the election of the county mayor and the members of the legislative body of such metropolitan government shall be considered to be municipal elections within the meaning of this section; *however, this section shall not be construed to require a partisan election for any other officers of the metropolitan government if the charter of such metropolitan government provides that elections for such officers shall be nonpartisan.*

(Emphasis added). We read this statute in accord with the natural and ordinary meaning of the words used. *Embraer Aircraft Maint. Servs., Inc. v. AeroCentury Corp.*, 538 S.W.3d 404, 410 (Tenn. 2017). The last portion of subsection (b) allows a metropolitan government to have nonpartisan elections for "any other officers of the metropolitan government," by providing for such nonpartisan elections in the charter. The Metropolitan Charter of Nashville and Davidson County does not so provide as to the assessor; therefore the election is partisan as provided in the general law.

We conclude, as did the trial court, that the proper election to use to calculate the number of signatures required on the referendum petition, the preceding general election, was the election held on August 4, 2016.

CONCLUSION

The judgment of the trial court is affirmed and this matter is remanded with costs of appeal assessed against the appellants, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE