IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 4, 2008 Session

## MARK A. SKIDMORE v. DARLEAN McDOUGAL ET AL.

**Appeal from the Chancery Court for Sumner County**
**No. 2006C-281      Tom E. Gray, Chancellor**

---

**No. M2007-00237-COA-R3-CV - Filed April 1, 2008**

---

The November 7, 2006 Hendersonville election for alderman in Ward 3 is the subject of this litigation. The margin of victory was a mere 18 votes. The losing candidate, Mr. Skidmore, challenged the election results. The chancellor held against him. Mr. Skidmore appeals, maintaining that a sufficient number of illegal votes were cast to require that the election be voided. We affirm the chancellor.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

Cheryl J. Skidmore, Gallatin, Tennessee, and John E. Herbison, Nashville, Tennessee, for the appellant, Mark A. Skidmore.

Arthur E. McClellan, Gallatin, Tennessee, for the appellee, Darlean McDougal et al.

**OPINION**

Background

This appeal arises from a challenge to the November 7, 2006 election for the Ward 3 alderman in Hendersonville, Tennessee. Plaintiff Mark Skidmore received 1,014 votes to defendant Lance Wray's 1,032 votes. Thus, Mr. Wray received 18 more votes than Mr. Skidmore.

Mr. Skidmore filed this action to void the election, claiming that illegal votes cast in the election outnumbered Mr. Wray's margin of victory. The final hearing was held on January 2, 2007. Initially, the chancellor heard arguments and granted a motion to exclude the testimony of 40 voters Mr. Skidmore had subpoenaed. After hearing testimony and legal arguments, the chancellor found that 14 residents of Ward 3 were assigned by the Sumner County Election Commission to vote in

wards other than Ward 3. The chancellor further found that 37 persons voted in Ward 3 who should not have voted there. After making these findings, the chancellor ruled, "But looking at the 14 persons and prevailing by 18 votes, he still had four votes in his favor – Mr. Wray. Looking at the 37 votes, the Court is of the opinion that that does call for proration and would come back to a four vote victory." Mr. Skidmore appealed, maintaining that the trial court should have voided the election because the number of illegal votes exceeded the margin of victory.

## Standard of Review

The chancellor's findings of fact are accorded a presumption of correctness unless the evidence preponderates against them. *Reinhardt v. Neal*, 241 S.W.3d 472, 474 (Tenn. Ct. App. 2007). The review of legal issues is de novo, with no deference to the trial court's conclusions of law. *Id.*

## Analysis

The Tennessee Constitution states: "The General Assembly shall have power to enact laws requiring voters to vote in the election precincts in which they may reside, and laws to secure the freedom of elections and the purity of the ballot box." Tenn. Const. Art. IV, § 1, ¶ 2 (1978). This sentence is the justification for most of the laws governing elections in Tennessee. In fact, the 1972 revision of the Tennessee election code references the goals of this constitutional provision. *See* Tenn. Code Ann. § 2-1-102(1) & (2). The General Assembly has furthered these goals by requiring that "[a] person shall be registered as a voter of the precinct in which the person is a resident," Tenn. Code Ann. § 2-2-107(a)(1), and "[a] voter may vote only in the precinct where the voter resides and is registered ...." Tenn. Code Ann. § 2-7-115(a). A vote cast in a precinct where the voter does not reside is an illegal vote. *Taylor v. Armentrout*, 632 S.W.2d 107, 118 (Tenn. 1981).

Our "courts should be appropriately reluctant to take the step of declaring an election invalid." *Forbes v. Bell*, 816 S.W.2d 2d 716, 724 (Tenn. 1991). No election is perfect and courts must appreciate that honest mistakes will happen. *Id.* (citing *Ingram v. Burnette*, 316 S.W.2d 31, 33 (Tenn. 1958)). The checks of residence and identity that voters endure in the voting process are an effort to minimize human error and thwart malfeasance. People staffing the voting precincts are volunteers who are paid a minimal amount of money[1] for working a long day. If there are highly contested elections, the day may be filled with the stress of serving long lines of people who, while wanting to do their civic duty, are pressed for time and react impatiently to long lines and voting procedures. November 7, 2006, was a significant election day in Hendersonville with elections for other offices besides Ward 3 alderman. This is the background against which we view the Hendersonville Ward 3 alderman election of November 7, 2006.

This case requires us to address two groups of voters – the 14 voters who should have voted in Ward 3, but did not, and the 37 voters who cast votes in Ward 3 who should not have done so.[2]

---

[1] Darlean McDougal, the administrator of elections for Sumner County, testified that they receive eighty dollars for working election day and twelve dollars for attending training.

[2] No party to this appeal appears to challenge these numbers.

It is our opinion that the chancellor erred in deducting the 14 votes cast in other wards from the 18-vote margin of victory in Ward 3. People who should have voted in Ward 3 but instead voted in another ward due to error by the county election commission had some responsibility to call the error to the attention of election officials prior to voting. *Taylor v. Armentrout*, 632 S.W.2d at 118, 121-22. Their votes, willingly cast elsewhere, have no bearing on the Ward 3 election and should have been disregarded by the chancellor.

The 37 voters who improperly cast votes in Ward 3 offer a difficult issue – whether their votes should be apportioned between the candidates as in *Taylor v. Armentrout*, 632 S.W.2d at 118, 121-22,[3] or compared with the margin of victory as suggested in *Forbes v. Bell*, 816 S.W.2d at 720.[4] We need not reach this issue, however, because there is no proof that these 37 voters cast votes in the alderman election in question. Darlean McDougal, the administrator of elections for Sumner County, testified that the total vote in the United States Senate race in Ward 3 on election day was 4,236 and the total vote in the Ward 3 alderman race was 2,051. Simple math reveals that less than half the people who voted in Ward 3 actually voted in the alderman election. Due to the chancellor's ruling that prohibited testimony from any of the voters subpoenaed as witnesses by the plaintiff,[5] there is no evidence that any of the 37 voters cast a vote in the Ward 3 alderman election. The methodologies for dealing with illegal votes found in *Taylor v. Armentrout* and *Forbes v. Bell* presuppose that the illegal votes were actually cast in the election at issue – otherwise the illegal votes are irrelevant to the vote tally. Consequently, absent proof that illegal votes were actually cast in the Hendersonville Ward 3 election for alderman, there is no remedy that this court or the trial court can offer Mr. Skidmore. We affirm the chancellor's decision to confirm Mr. Wray as the winner of the election and to dismiss the case.

Although we disagree with the chancellor's reasons for dismissing the case, we affirm the dismissal. Costs of appeal are assessed against Appellant Mark Skidmore and his surety, for which execution may issue, if necessary.

_____
ANDY D. BENNETT, JUDGE

---

[3] "If it is known how the person voted, the vote can be subtracted from that total. If it is not known how he voted, the rule in Tennessee is that a fraction of his vote is subtracted from each total according to that total's relationship to the entire number of votes." *Taylor v. Armentrout*, 632 S.W.2d at 118.

[4] "In cases in which the contestant seeks to have the election declared void, the prescribed methodology is for the court to consider all of the illegal votes as having been voted one way (against the contestee) and then to ascertain whether the results of the election would thereby have been changed." *Forbes v. Bell*, 816 S.W.2d at 720.

[5] The chancellor's ruling was not appealed.