# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
Assigned On Briefs December 8, 2010

## IN THE MATTER OF: ESTATE OF CURTIS RINDA, TERRY ABERNATHY, ADMINISTRATOR

**Direct Appeal from the Chancery Court for McNairy County**
**No. P-948     William C. Cole, Chancellor**

---

**No. W2010-01888-COA-R3-CV - Filed December 23, 2010**

---

Appellant, the Estate of the Decedent herein, appeals the Chancery Court of McNairy County's denial of the Estate's exception to a claim for Decedent's funeral expenses. Decedent's brother, the Appellee herein, held a power of attorney for his father (who is also Decedent's father). Appellee exercised the power of attorney to arrange Decedent's funeral and to pay for that funeral with the father's funds. The claim, which was filed in Appellee's name only, was excepted by the Estate, on grounds that Appellee had no standing to file the claim because he did not, in fact, pay the funeral expenses. The trial court allowed the claim, but held that it was payable to the father. The Estate appeals. We find that the existence and amount of the claim are supported by the record, and that Appellee's power of attorney authorized him : (1) to bind the father to the funeral contract, (2) to pay the funeral expenses from the father's funds, and (3) to file a claim against the Estate, on behalf of the father, to recoup those expenses from the Estate. The decision reached by the trial court is affirmed.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Terry Abernathy, Selmer, Tennessee, for the appellant, Terry Abernathy, Administrator.

Melissa G. Stewart-Leitschuh, Selmer, Tennessee, for the appellee, Scott Rinda.

**MEMORANDUM OPINION[1]**

The Decedent, Curtis W. Rinda, died testate on November 14, 2009. His Last Will and Testament (the "Will") was admitted to probate by Order of the Chancery Court of McNairy County, on December 8, 2009. The Decedent's Will provides, in pertinent part, as follows:

> I direct that all of my lawful debts, including funeral expenses and the expenses of administration of my estate, be paid out of my general estate by my Executrix as soon as practicable after my death.[2]

On January 19, 2009, the Decedent's brother, Appellee Scott Rinda, filed a claim against the Appellant, Estate of Curtis W. Rinda (the "Estate"), seeking reimbursement for funeral expenses in the amount of $10,491.56. Attached to the claim was a "Funeral Purchase Contract" (the "Contract") made with Betzer Funeral Home. The Contract indicates that the "Deceased is the brother of the person arranging services." It is signed by Scott Rinda. The Contract also contains an itemization of the expenses. A handwritten notation, signed by the owner of Betzer's Funeral Home, indicates that the $10,491.56 had been "paid in full" as of January 5, 2010.

On May 4, 2010, Mr. Abernathy, as the Administrator CTA of the Estate,[3] filed an

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2] The Will names Rebecca Blanche Mayo as the Executrix. Ms. Mayo's relation to the Decedent is not contained in the record; however, Ms. Mayo is also the sole beneficiary of the Will. On January 28, 2010, Ms. Mayo moved the trial court for permission to withdraw as Executrix, and for appointment of an administrator C.T.A. By Order of March 1, 2010, Ms. Mayo was allowed to withdraw, and attorney Terry Abernathy was appointed as administrator C.T.A.

[3] An administrator is appointed by the court (as opposed to an executor or executrix, who is named in the will). There are two types of administrators. The first is an *administrator cum testamento annexo* (or *c.t.a.*)–i.e., "with the will annexed." Bryan A. Garner, *A Dictionary of Modern Legal Usage* 29 (2d ed.1995). The second is an *administrator de bonis non* (or *d.b.n.*), which is an elliptical phrase for *administrator de bonis non administratis*, i.e., administrator of goods not administered. *Id.* As in the instant case, an

(continued...)

exception to Scott Rinda's claim, and specifically argued that the claim should be denied based upon the following:

> 1. That, upon information and belief, the claimant [i.e., Scott Rinda] did not pay the funeral bill of Curtis Rinda as alleged, or in the alternative, the Administrator CTA would demand accurate and compelling evidence that the claimant did in fact pay the funeral bill as alleged.

> 2. That, in the alternative, the Administrator CTA would object to this claim because the deceased, Curtis W. Rinda, provided for assets to satisfy this funeral bill, including, but perhaps not limited to, one or more life insurance policies payable to the claimant, which were for the purpose of satisfying any funeral bill or other death-related expenses.[4]

On or about July 12, 2010, Scott Rinda filed an amended claim against the Estate. The amended claim, in the amount of $10,491.56, indicates that it is filed by "Scott Rinda as power of attorney for Walter Rinda." According to the record, Scott Rinda held his father, Walter Rinda's, power of attorney.[5] The power of attorney, dated November 19, 2009, and admitted as Trial Exhibit 1 is very broad, and includes all of the powers specifically outlined at Tenn. Code Ann. § 34-6-109, along with several other specified powers. There appears to be no dispute in the record concerning the validity of the power of attorney. As relates to the present appeal, the power of attorney specifically grants Scott Rinda the power:

> 2. To ask, demand, sue for, collect, recover, and receive all sums of money, debts, dues, accounts...merchandise, and demands whatsoever, as are now, or shall hereafter become due, owing, payable, or belonging to me and have, use and take all

---

[3](...continued)

*administrator c.t.a.* is appointed if the testator does not name an executor or if the named executor for any reason does not act; an *administrator d.b.n.* is appointed if a prior administrator has begun to act but later dies or is removed. **Id**. The phrase *administrator c.t.a.* is often translated *administrator with the will annexed.* **Id**.

[4] The fact that the Decedent's life insurance may have provided coverage for funeral expenses does not, *ipso facto*, indicate that those funds were, in fact, used for that purpose. Rather, as discussed, *infra*, the record indicates that the Decedent's funeral expenses were paid by the Decedent's father, Walter Rinda.

[5] Walter Rinda is also the father of the Decedent.

lawful ways or means in my name or otherwise for the recovery thereof, and to compromise and agree for the same or otherwise discharge the same for me and in my name upon such terms and conditions as my attorney in fact shall think fit.

\*                                    \*                                    \*

6.    To bargain, contract, agree for...goods, services, merchandise...all upon such terms and conditions as my attorney in fact shall think fit.

Trial Exhibit 3 contains a copy of a cashier's check, drawn on First Midwest Bank, made payable to Betzer's Funeral Home, in the amount of $4,000.00. The notation on the check reads: "For Walter Louis Rinda." Exhibit 3 also contains a receipt from Betzer's Funeral Home, indicating receipt of the $4,000.00 "from Scott Rinda," and reflecting a balance on the account of $5,091.56. Trial Exhibit 4 is a cashier's check, drawn on First Midwest Bank, in the amount of $5,091.56, made payable to Betzer's Funeral Home. This cashier's check, like the first, indicates that it is "for Walter Louis Rinda." Trial Exhibit 5 is a copy of check number 402, drawn on the account of Walter Louis Rinda, in the amount of 400.00. This check is made payable to "East Delevan (Union) Cemetery" and is signed by "/S/ Scott Rinda (P.O.A.)." The notation indicates that the check is "for Deposit–C.W. Rinda). Finally, Trial Exhibit 6 is a copy of check number 403, also drawn on the account of Walter Louis Rinda. This check is also made payable to "East Delevan (Union) Cemetery," and is in the amount of $1,000.00. Check 403 is signed "/S/ Scott W. Rinda (POA), with the notation that it is for "Lot & Open/Close." From the record, there appears to be no dispute concerning the validity of these exhibits. Furthermore, there is no dispute that the funds from these checks were actually paid to Betzer's Funeral Home and East Delevan (Union) Cemetery, and that the money was used for the Decedent's funeral expenses. The total of these four checks is $10,491.56, which is the amount of the claim filed by Scott Rinda.

By Order of July 26, 2010, the trial court overruled the Estate's exception, and held, in relevant part, as follows:

5. The claim in the amount of $10,491.56 is a valid claim of the Estate of Curtis Rinda and should be allowed.

6. Said claim shall be paid to Walter Rinda.

The Estate appeals, and raises two issues for review as stated in its brief:

-4-

1.  Did the Chancery Court of McNairy County, Tennessee err in overruling/denying the Estate's Exception to the Claim filed against the Estate of Curtis W. Rinda as filed by Scott Rinda?

2.  Although perhaps contained in Issue No. 1 above, did the Chancery Court of McNairy County, Tennessee, err in Ordering that the disputed Claim be paid to Walter Rinda, notwithstanding the fact that the Claim was filed by Scott Rinda?

Tenn. Code Ann. § 30-2-315 provides, in relevant part, that:

> (b) A judgment upon the findings of the court shall be entered in the court and from the judgment an appeal may be perfected within thirty (30) days from the date of entry of the judgment, to the court of appeals or the supreme court, as the case may be. The procedure on appeal shall be governed by the Tennessee Rules of Appellate Procedure.

This case was tried in the trial court without a jury. Accordingly, the standard of review is *de novo* upon the record with a presumption of correctness as to the findings of fact, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); ***Cross v. City of Memphis***, 20 S.W.3d 642, 644-45 (Tenn. 2000). To the extent that the determination of the issues rests on statutory construction, they present questions of law. ***Myint v. Allstate Ins. Co.***, 970 S.W.2d 920, 924 (Tenn. 1998). Questions of law are reviewed *de novo* with no presumption of correctness. ***Id***.

We further note that Tenn. R. App. P. 24(a) provides that the record on appeal shall include certified copies of all papers filed in the trial court (with certain specified exceptions) and the original of any exhibits filed in the trial court. Tenn. R. App. P. 24(b) further provides that "[i]f a stenographic report or other contemporaneously recorded, substantially verbatim recital of the evidence or proceedings is available," it is the duty of the appellant to prepare "[a] transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Here, only the trial exhibits were filed with the appellate record, and there is neither a transcript, nor a statement of the evidence. In cases where no transcript or statement of the evidence is filed, the appellate court is required to presume that the record, had it been properly preserved, would have supported the action of the trial court. ***Reinhardt v. Neal***, 241 S.W.3d 472, 477 (Tenn. Ct. App. 2007); ***Sherrod v. Wix***, 849 S.W.2d 780, 783 (Tenn. Ct. App. 1992).

In the absence of a transcript or statement of the evidence, and in the absence of any contrary findings by the trial court, we presume that the exhibits are a fair and accurate reflection of the facts, and that Scott Rinda did, in fact, hold a valid power of attorney from Walter Rinda. As set out above, the four checks that were admitted into evidence were all either drawn on Walter Rinda's account, or specifically noted that they were for him. Furthermore, it is undisputed that Scott Rinda held a very broad power of attorney for Walter Rinda, and that this power of attorney specifically granted Scott Rinda the power to bargain and contract for services on behalf of his father. It is well settled that an attorney in fact stands in the shoes of his or her principal and that:

> [a]ll acts done by an attorney in fact pursuant to a durable power of attorney...have the same effect and inure to the benefit of and bind the principal and the principal's successor in interest as if the principal were competent and not disabled.

Tenn. Code Ann. § 34-6-102.

From the evidence in the record, we can only conclude that Scott Rinda was acting on behalf of Walter Rinda in contracting for the burial expenses of Walter Rinda's son, the Decedent. As noted above, there is no dispute in the record that the funds from the four checks were, in fact, paid to Betzer's Funeral Home and to the cemetery for expenses related to the Decedent's burial. Moreover, the Decedent's Will clearly directs the representative of the Estate to pay the Decedent's funeral expenses from the Estate.

The fact that Scott Rinda held his father's power of attorney not only gave him standing to contract, on behalf of his father, for the Decedent's funeral, but it also gave Scott Rinda standing to file a claim against the Estate, on behalf of his father, to recoup those expenditures. The Estate's argument that the funeral expenses were not technically paid by Scott Rinda but were paid by Walter Rinda is tenuous at best in light of the fact that Scott Rinda was acting as Walter Rinda's attorney in fact in planning and paying for the Decedent's funeral expenses.

However, even if we allow, *arguendo*, that the original claim filed on January 19, 2009, was deficient, any technical deficiency in the claim was cured by the amendment thereto, where Scott Rinda specifically states that the claim is made by him in his capacity as Walter Rinda's attorney in fact. *See* Tenn. Code Ann. § 30-2-307. Moreover, the trial court's order, indicating that the claim should be paid to Walter Rinda, further cures any issue that might have arisen had the claim, in fact, been paid to Scott Rinda. The power of attorney provides Scott Rinda with the authority to bind Walter Rinda in any contract for services. Scott Rinda did, in fact, bind Walter Rinda to a contract for funeral services for the

Decedent.  The Decedent's funeral expenses were paid with Walter Rinda's funds.  As his attorney in fact, Scott Rinda had standing to file a claim against the Decedent's Estate to recover the funeral expenses.  Any shortcoming in the initial claim, filed only in Scott Rinda's name, was cured by the amendment thereto and/or the trial court's order indicating that the claim was to be paid to Walter Rinda.

For the foregoing reasons, we affirm the order of the trial court, allowing the claim of $10,491.56, payable to Walter Rinda.  Costs of this appeal are assessed against the Appellant, Estate of Curtis Rinda, and its surety.

_____
J. STEVEN STAFFORD, JUDGE