IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Submitted on Brief June 28, 2013

SARAH PATRICIA EMANUELE
v.
JOSHUA DAVID SCRITCHFIELD

Appeal from the Juvenile Court of Shelby County
No. Y1079   Dan H. Michael, Special Judge

No. W2013-00514-COA-R3-JV - Filed August 14, 2013

This appeal involves jurisdiction as to a parentage petition and related issues. The mother of the subject child lives in New York and the father lives in Tennessee. The child lives with the mother in New York. The mother filed this parentage petition in Tennessee. The Tennessee juvenile court entered an order establishing the father's parentage and adjudicating child support, the designation of the primary residential parent, and the allocation of the parties' residential parenting time. The mother appeals, challenging in part the jurisdiction of the juvenile court to adjudicate custody and child support. We affirm the juvenile court's final order on the father's parentage. We vacate the final order on the designation of primary residential parent and the allocation of residential parenting time, as the Tennessee court did not have jurisdiction over these issues under the Uniform Child Custody Jurisdiction and Enforcement Act. We hold that the Tennessee court had jurisdiction to adjudicate child support, but vacate its final order on child support because the determination is based in part on the adjudication of the primary residential parent and the allocation of residential parenting time.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court is Affirmed in Part, Vacated in Part, and Remanded**

HOLLY M. KIRBY, J., delivered the Opinion of the Court, in which ALAN E. HIGHERS, P.J. W.S., and J. STEVEN STAFFORD, J., joined.

Petitioner/Appellant Sarah Patricia Emanuele, Cornwall, New York, self-represented

Jimmie D. Drewry, Memphis, Tennessee for Respondent/Appellee Joshua David Scritchfield

FACTS AND PROCEEDINGS BELOW

In 2010, Petitioner/Appellant Sarah Patricia Emanuele ("Mother") and Respondent/Appellee Joshua David Scritchfield ("Father") worked together in Memphis, Tennessee. Their working relationship became intimate and ultimately resulted in the birth of the child at issue in this appeal, a daughter ("Daughter") born in May 2011. Though Daughter was conceived in Tennessee, it is undisputed that she was born in New York and has resided with Mother in New York since birth. Father remains in Tennessee.[2]

In August 2011, Mother filed the instant petition in the Juvenile Court of Shelby County, Tennessee. Mother's petition sought to establish Father's parentage of Daughter. At some point after Mother filed her parentage petition, private DNA tests were conducted. They showed a 99.999996% probability that Father is Daughter's biological father.

The Juvenile Court held a hearing on Mother's petition in September 2011. The record does not contain a transcript or statement of the evidence for this hearing. Both parties were present at the hearing and represented by counsel. After the hearing, on October 5, 2011, the Juvenile Court entered an order holding that Father is the biological father of Daughter. The order attached a child support worksheet and included a temporary award of child support. The child support worksheet based the child support calculation on an estimate that Mother

---

[1]**Rule 10. Memorandum Opinion**

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

Tenn. Ct. App. R. 10.

[2]In her appellate brief, Mother claims that, shortly after Daughter was born, she filed an action in New York to establish Father's parentage and his child support obligation and to adjudicate custody. Mother claims in her brief that this New York action was dismissed for lack of personal jurisdiction as to Father. The appellate record contains no documentation or other support for Mother's assertions about the purported New York proceedings. In this appeal, as in all appeals, we are limited to the appellate record; unsupported assertions in the parties' briefs are not part of the appellate record and cannot be considered. *See McDonald v. Onoh*, 772 S.W.2d 913, 914 (Tenn. Ct. App. 1989) (assertions in the parties' briefs are not part of the appellate record and cannot be considered). Accordingly, we decline to consider Mother's assertions as to any alleged New York proceedings.

would have 285 residential parenting days a year and Father 80 days, with income imputed to Mother in the amount of $4,667 per month and an adjusted gross income for Father in the amount of $8,100 per month. Based on these figures, the order included a temporary child support award of $816.00 per month, with payments by income assignment. The October 5, 2011 temporary order provided that Daughter's surname would remain the same, amended Daughter's birth certificate, and provided that both parties would split the cost of the child's medical insurance and the medical expenses not covered by insurance. The case was continued to February 23, 2012 at the request of the attorneys.

In November 2011, prior to the scheduled February 2012 hearing, Mother's attorney filed a petition in the Juvenile Court seeking court permission to withdraw as counsel. On February 13, 2012, ten days before the scheduled hearing, the Juvenile Court entered an order permitting Mother's counsel to withdraw.

The day after her attorney was granted permission to withdraw, Mother – at that point self-represented – submitted to the trial court a notarized affidavit seeking dismissal without prejudice of her parentage petition and the findings and recommendations of the Magistrate.[3] The document does not include a certificate of service or other indication that it was served on Father. At Mother's request, the scheduled February hearing was continued to April 26, 2012.

The April hearing took place as scheduled. The record does not include a transcript or statement of the evidence for this hearing.[4] After the hearing, the Juvenile Court Magistrate issued additional findings and recommendations modifying the earlier temporary order. The Magistrate's findings and recommendations were confirmed by the Juvenile Court Judge on April 26, 2012;[5] this became the final order on Mother's parentage petition. It held the following:

> 1. That said child(ren) shall be a legitimate child(ren) of the defendant for purpose of inheritance, support, and all other lawful purposes and that custody of said child(ren) be awarded to the mother.

---

[3]The document that is in the record appears to have been faxed from New York; it does not contain a file stamp.

[4]The Magistrate's findings and recommendations state only that Father and his attorney were present and before the court; Mother is not mentioned.

[5]The filing and entry dates for the permanent order are confusing in the record. This order is signed by both the Magistrate and the Juvenile Court Judge on May 2, 2012, but a later corrective order in the record states that the order should have been dated April 26, 2012. It was filed on May 8, 2012.

2. That the defendant pay all medical expenses incident to the birth of said child(ren) and that he pay $816.00 monthly . . . , toward the support of said child(ren) beginning on the October 1, 2011, and that future payments be made by income assignment. Unless specifically ordered by the Court, such support shall not be reduced or prorated.

3. That the retroactive child support is awarded in the amount of $4,080.00, to be paid at the rate of $25.00 monthly. Payment of arrears at the rate shown above is a minimum payment and does not preclude the Petitioner from collecting the judgment by other means, such as tax refund intercept, lien, or levy and execution.

4. That joint custody of said child be awarded to the mother, Sarah Emanuele and the father, Joshua Scritchfield with the mother being the primary custodial parent.

5. That the father of said child(ren), Joshua Scritchfield, shall have visitation privileges with said child(ren) each summer for two weeks in June and two weeks in July, upon giving the mother a fourteen (14) day notice, at the expense of the father.

6. That the father shall pick up and return the child(ren) to the home of the custodial parent.

Thus, the April 26, 2012 final order established Father's parentage, adjudicated child support, and included a parenting plan that allocated the parties' residential parenting time.

On April 30, 2012, Mother requested a hearing before the Juvenile Court Judge on the April 2012 parenting plan order. Shortly thereafter, on May 3, 2012, Mother filed a motion asking the Juvenile Court to dismiss without prejudice her parentage petition and vacate the orders entered on the petition.

On May 31, 2012, the Juvenile Court Magistrate held a hearing on Mother's motion to dismiss without prejudice her parentage petition.[6] The Magistrate recommended denial of Mother's motion to dismiss; this recommendation was confirmed by the Juvenile Court Judge on the same day. There is no transcript or statement of the evidence on this hearing. Mother then made a request for a hearing before the Juvenile Court Judge on the denial of her motion to dismiss. After that, the Juvenile Court Judge granted Mother's request for a hearing as to both the April 2012 parenting plan order and the denial of her motion to dismiss.

---

[6]Attorney Phillip R. Walker made a limited appearance on Mother's behalf at this hearing, for the purpose of arguing the motion to dismiss.

In October 2012, all matters were finally heard before a Special Judge appointed by the Juvenile Court. Mother did not appear at the hearing. In light of Mother's failure to appear, the Juvenile Court dismissed both of her petitions to rehear.[7] Mother now appeals.

## ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Mother raises numerous issues. First, she argues that the Juvenile Court erred in refusing to allow her to withdraw her parentage petition. Mother also notes that her parentage petition did not ask the Juvenile Court to adjudicate child support and the parenting plan and argues that the Juvenile Court did not have jurisdiction to do so in the absence of a request from Mother. In the alternative, Mother argues that the "juvenile court entered a custody and visitation agreement without the jurisdiction to do so, thus violating the UCCJEA." Mother also argues that Tennessee is an inconvenient forum for child support, custody, and visitation, given that New York is the child's home state. Finally, Mother challenges the Juvenile Court's calculation of child support and its decision to make the temporary child support order a final order.[8]

We review the trial court's factual findings *de novo* on the record, with a presumption of correctness, unless the evidence preponderates to the contrary. *See* Tenn. R. App. P. 13(d). The trial court's conclusions of law are reviewed *de novo*, with no presumption of correctness. *See Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000); *Earls v. Mendoza*, No. W2010-01878-COA-R3-CV, 2011 WL 3481007, at *5 (Tenn. Ct. App. Aug. 10, 2011). The issue of jurisdiction presents a question of law. *McQuade v. McQuade*, No. M2010-00069-COA-R3-CV, 2010 WL 4940386, at *4 (Tenn. Ct. App. Nov. 30, 2010) (citing *Button v. Waite*, 208 S.W.3d 366, 369 (Tenn. 2006)).

## ANALYSIS

### Voluntary Dismissal

Mother first argues that the Juvenile Court erred in declining to dismiss her parentage petition, because she "requested to withdraw her paternity petition . . . on several occasions." The requests to withdraw to which Mother refers were in the form of an affidavit and then

---

[7]The order entered in October 2012 refers to Mother's petition to rehear without indicating which one. In February 2013, the Juvenile Court filed a corrective order clarifying that the October 2012 order dismissed both of Mother's petitions to rehear.

[8]Mother also contends that the Juvenile Court erred in refusing to honor the parties' agreement to have a New York court adjudicate child support. As there is no indication in the record of such an agreement, we decline to consider this issue on appeal.

later a motion to dismiss without prejudice, i.e., take a voluntary nonsuit. ***See Wall v. Hillside Hosp., Inc.***, No. M2005-02529-COA-R3-CV, 2008 WL 275968, at *4 (Tenn. Ct. App. Jan. 31, 2008).

A trial court's refusal to grant a voluntary nonsuit is reviewed under an abuse of discretion standard; it will be "upheld as long as it is not clearly unreasonable, and reasonable minds can disagree about its correctness." ***See Wall,*** 2008 WL 275968, at *4 (citing ***Bogan v. Bogan***, 60 S.W.3d 721, 733 (Tenn. 2001), ***Eldridge v. Eldridge***, 42 S.W.3d 82, 85 (Tenn. 2001)); ***see also Oliver v. Hydro-Vac Servs. Inc.***, 873 S.W.2d 694, 696 (Tenn. Ct. App. 1993).

Rule 41 of the Tennessee Rules of Civil Procedure "permits liberal use of voluntary nonsuits at any time prior to 'final submission' to the trial court for decision in a bench trial. . . ." ***Himmelfarb v. Allain***, 380 S.W.3d 35, 40 (Tenn. 2012) (citing Tenn. R. Civ. P 41.01 adv. comm. cmt.; Lawrence A. Pivnick, 1 *Tennessee Circuit Court Practice* § 23:1 (2011)). In a bench trial, the petitioner's right to voluntary dismissal without prejudice "continues only 'until the matter has been finally submitted to the court for determination on the merits.' " ***Lacy v. Cox,*** 152 S.W.3d 480, 486 n. 14 (Tenn. 2004) (citing ***Weedman v. Searcy***, 781 S.W.2d 855, 857 (Tenn. 1989)). Rule 41.01 indicates that a party may take a voluntary nonsuit "by filing a written notice of dismissal at any time before the trial of a cause and serving a copy of the notice upon all parties." Tenn. R. Civ. P. 41.01.

In the case at bar, the record contains an affidavit by Mother dated in February 2012, which asks the Juvenile Court to permit Mother to withdraw her petition and dismiss without prejudice the findings and recommendations of the Magistrate issued in October 2011. There is no file stamp on the document and no indication that it was served on Father. From our review of the record, this document does not comport with Rule 41.01 of the Tennessee Rules of Civil Procedure.

The record also contains Mother's motion to dismiss the parentage petition without prejudice. This motion was filed by Mother on May 3, 2012, after the second hearing on Mother's parentage petition and after the Juvenile Court Magistrate's additional findings and recommendations were confirmed by the Juvenile Judge. Thus, the motion was not timely, as it was filed after the Juvenile Court had adjudicated the parentage petition. Under these circumstances, we cannot conclude that the Juvenile Court abused its discretion by refusing to dismiss Mother's parentage petition without prejudice.

**Jurisdiction**

Mother contends that the Juvenile Court was without jurisdiction to adjudicate child support, custody, and residential parenting time because her petition sought only to establish Father's parentage and did not ask the Tennessee court to adjudicate custody or child support issues.

Tennessee's parentage statute, Tennessee Code Annotated § 36-2-311, states that, "upon establishing parentage, the court shall make an order. . . [that] shall include" a "[d]etermination of the custody of the child pursuant to chapter 6 of this title," a "[d]etermination of visitation or parental access pursuant to chapter 6 of this title," and a "[d]etermination of child support pursuant to chapter 5 of this title. . . ." Tenn. Code Ann. § 36-2-311(a)(9)-(11) (2010). Thus, Tennessee's parentage statutes envision that an order establishing parentage will also resolve child support and custody.

However, the parentage statutes also refer to the jurisdictional requirements in Chapters 5 and 6, on child support and custody. We examine first the Juvenile Court's jurisdiction to adjudicate custody, and then its jurisdiction to adjudicate child support. *See Earls*, 2011 WL 3481007, at *10 (citing *McQuade*, 2010 WL 4940386, at *10; *Highfill v. Moody*, No. W2009-01715-COA-R3-CV, 2010 WL 2075698, at *6-7 (Tenn. Ct. App. May, 25, 2010)).

### *Custody*

In Tennessee Code Annotated § 36-6-201, *et seq.*, Tennessee adopted and codified the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"). The UCCJEA details the circumstances under which a Tennessee trial court has jurisdiction to make an initial custody determination. Tenn. Code Ann. § 36-6-216 (2010); *Earls*, 2011 WL 3481007, at *6. The Act defines "child custody determination" as follows:

> "Child custody determination" means a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child. "Child custody determination" includes a permanent temporary, initial, and modification order. "Child custody determination" does not include an order relating to child support or other monetary obligation of an individual.

Tenn. Code Ann. § 36-6-205(3). Thus, child support is expressly excluded from the parameters of the UCCJEA.

Under Tennessee's UCCJEA, Section § 36-6-216(a) governs initial child custody determinations. *McQuade*, 2010 WL 4940386, at *8; *In re S.L.M.*, 207 S.W.3d 288, 298 (Tenn. Ct. App. 2006). Section 36-6-216 states:

> (a) Except as otherwise provided in § 36-6-219, a court of this state has jurisdiction to make an initial child custody determination only if:
> > (1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six (6) months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;
> > (2) A court of another state does not have jurisdiction under subdivision (a)(1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under §§ 36-6-221 or 36-6-222, and:
> > > (A) The child and the child's parents, or the child and at least one (1) parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and
> > > (B) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;
> > (3) All courts having jurisdiction under subdivision (a)(1) or (a)(2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under §§ 36-6-221 or 36-6-222; or
> > (4) No court of any other state would have jurisdiction under the criteria specified in subdivision (a)(1), (a)(2), or (a)(3).
> (b) Subsection (a) is the exclusive jurisdictional basis for making a child-custody determination by a court of this state.
> (c) Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child-custody determination.

Tenn. Code Ann. § 36-6-216. Therefore, under this statute, "a court with 'home state' jurisdiction . . . has first priority." *Earls*, 2011 WL 3481007, at *10. The term "home state" is defined as:

> [T]he state in which a child lived with a parent or a person acting as a parent for at least six (6) consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six (6) months

of age, 'home state' means the state in which the child lived from birth with any of the persons mentioned. . . .

Tenn. Code Ann. § 36-6-205(7).

In this case, Mother filed her parentage petition in Tennessee when Daughter was less than six months old. It is undisputed that the child was born in New York and has resided there with Mother since birth.[9] Thus, based on Section 36-6-216(a)(1), New York is presumed to be Daughter's home state. As such, we agree with Mother that the Tennessee Juvenile Court did not have jurisdiction to adjudicate custody or the parties' residential parenting schedule as to Daughter.[10]

### Child Support

We next address the Juvenile Court's jurisdiction to award child support.[11] Tennessee's juvenile courts "have broad statutory authority to establish a child's paternity and to issue

---

[9] There is nothing in the appellate record indicating that New York has declined to exercise jurisdiction in favor of Tennessee. As mentioned above, Mother makes this assertion in her appellate brief, but her assertion is not supported by the record. We decline to consider unsupported assertions contained in Mother's appellate brief. *See Bean v. Bean*, 40 S.W.3d 52, 56 (Tenn. Ct. App. 2000) ("This Court is under no duty to verify unsupported allegations in a party's brief, . . ."); *McDonald,* 772 S.W.2d at 914.

[10] A determination of parentage, in and of itself, is not considered a "child custody determination" under the UCCJEA. Rather, a parentage action has component parts, some of which may be governed by the UCCJEA. *See* Official Comment to Tenn. Code Ann. § 36-6-205 ("While a determination of paternity is covered under the Uniform Interstate Family Support Act, the custody and visitation aspects of paternity are custody proceedings.")

[11] In general, interstate jurisdictional questions involving both parentage and child support are governed by the Uniform Interstate Family Support Act ("UIFSA"), Tenn. Code Ann. § 36-5-2001 *et seq*. *Earls*, 2011 WL 3481007, at *10. However, the UIFSA is not implicated in this case because Father is a Tennessee resident and Mother filed the parentage petition in Tennessee. *See LeTellier v. LeTellier*, 40 S.W.3d 490, 494-95 (Tenn. 2001) (holding that the UIFSA "applies only to proceedings to establish, enforce, or modify Tennessee support decrees against an out-of-state resident."). *See also* Kurtis A. Kemper, J.D., *Construction and Application of Uniform Interstate Family Support Act*, 90 A.L.R.5th 1 (2001)("In *LeTellier v. LeTellier*, 40 S.W.3d 490, 90 A.L.R.5th 707 (Tenn. 2001), the Tennessee Supreme Court held that § 202 of the UIFSA as enacted by Tennessee . . . applies only to proceedings to establish, enforce, and modify Tennessee support orders against an out-of-state resident, expressly rejecting § 202 of the UIFSA to mean that whenever personal jurisdiction can be asserted over a nonresident pursuant to the long-arm provisions of § 201 of the UIFSA, other parts of the UIFSA, including § 611 regarding modification of registered foreign child support orders, have no application."); Tenn. Code Ann. § 36-5-2201 (entitled "Bases for jurisdiction over a nonresident.").

orders setting, modifying or even terminating child support. . . ." *State ex rel. Whitley v. Lewis*, 244 S.W.3d 824, 831 (Tenn. Ct. App. 2007) (quoting *White v. State ex rel. Armstrong*, No. M1999-00713-COA-R3-CV, 2001 WL 134601, at *2; 2001 Tenn. App. LEXIS 101, at *7-8 (Tenn. Ct. App. Feb. 16, 2001)). In this case, the Juvenile Court had subject matter jurisdiction to adjudicate child support as part of the parentage action Mother filed. *See* Tenn. Code Ann. §§ 36-5-101, 36-2-311; 36-5-2401. The Tennessee Juvenile Court had personal jurisdiction over both Mother and Father, because Mother chose to file her parentage petition in Tennessee and Father is a Tennessee resident. *See* Tenn. Code Ann. § 36-5-2201 (extending bases of personal jurisdiction for purposes of establishing, modifying, and enforcing child support over a non-resident); *Overby v. Overby*, 457 S.W.2d 851, 852 (Tenn. 1970); *Richards on Tennessee Family Law* § 10-5 ("The court must have personal jurisdiction over the defendant to order the payment of child support.").

Mother argues that Tennessee is an inconvenient forum for child support and that New York is the more appropriate forum. She stresses that she does not have the income to repeatedly travel to Tennessee to adjudicate child support. We find no indication in the record that Mother raised this issue in the trial court below, and we decline to address it in the first instance on appeal. *Fayne v. Vincent,* 301 S.W.3d 162, 171 (Tenn. 2009).

Mother disputes the Juvenile Court's calculation of the amount of child support. She contends that the amount awarded was "grossly unjust and disproportionate to both parties['] actual income[s]."[12]

In Tennessee, the calculation of the amount of an award of child support is based on the income shares model, which "provides a numerical schedule and a worksheet, into which the income of each parent is entered, together with other relevant information, such as the number of children whose support is at issue, the number of other children for whom a parent may have to bear financial responsibility, and the number of days the child or children spend with each parent." *Smith v. Smith*, No. M2006-01390-COA-R3-CV, 2010 WL 288758, at

---

[12]Mother argues in part that she was not given an opportunity "to exercise [her] right to present . . . proof" on the child support calculation because she was removed from the courtroom during the discussion of child support at the September 2011 hearing. We note that Mother was represented by counsel at the September 2011 hearing. She then failed to appear at the subsequent April 2012 hearing before the Juvenile Court Magistrate and October 2012 hearing before the Special Judge. Moreover, the record contains no transcript or statement of the evidence for the September 2011 hearing, so we have little choice but to presume that the evidence presented at the September 2011 hearing supports the Juvenile Court's factual findings as to the parties' income. *Reinhardt v. Neal*, 241 S.W.3d 472, 477 (Tenn. Ct. App. 2007)("In the absence of a transcript or a statement of the evidence prepared in accordance with Tenn. R. App. P. 24(c), we must presume that the evidence supports the trial court's findings . . . .") (citing *Sherrod v. Wix*, 849 S.W.2d 780, 783 (Tenn. Ct. App. 1992)).

*5 (Tenn. Ct. App. Jan. 25, 2010). The Juvenile Court initially entered a temporary order on October 5, 2011, adjudicating child support based on the default "standard" allocation of parenting time, in which the child lives primarily with one parent and has residential parenting time with the other parent a "minimum of every other weekend from Friday to Sunday, two (2) weeks in the summer, and two (2) weeks during holidays throughout the year, for a total of eighty (80) days per year." Tenn. Comp. R. & Regs. ch. 1240-02-04-.04(7)(a); *see also Richards on Tennessee Family Law* § 10-7(d)(3). The temporary child support award also gave Father an $800 per month credit for another child who does not live with him.

As noted above, the calculation of child support in Tennessee is determined in part by the designation of the primary residential parent and the allocation of the parties' residential parenting time. *See* Tenn. Comp. R. & Regs. ch. 1240-02-04-.04(6) and (7). As we have held, although the Tennessee Juvenile Court had jurisdiction to adjudicate Father's child support obligation, it did not have jurisdiction to adjudicate either the designation of primary residential parent or the allocation of the parties' residential parenting time, both necessary for a final determination of child support.

## CONCLUSION

Under the circumstances of this case, it is necessary for us to vacate the Juvenile Court's April 26, 2012 final order insofar as it adjudicates the designation of primary residential parent, the allocation of the parties' residential parenting time, and related custody issues, for want of jurisdiction. In light of this, we must also vacate the April 26, 2012 final order as to the amount of Father's child support obligation, because the final calculation of child support hinges on the designation of primary residential parent and the allocation of residential parenting time. The April 26, 2012 final order is affirmed and remains in force insofar as it adjudicates Father's parentage of Daughter.

The Juvenile Court entered a temporary order on October 5, 2011, preliminarily adjudicating Father's parentage. It included a temporary child support award based on the default "standard" residential parenting time allocation. We vacate the October 5, 2011 temporary order insofar as it purports to adjudicate the designation of primary residential parent and the allocation of residential parenting time, again for want of jurisdiction. However, we leave in place the temporary award of child support, pending adjudication of the designation of primary residential parent and the allocation of the parties' residential parenting time by a court with jurisdiction to do so. This temporary child support award includes the credit to Father's child support obligation for his other child, not a subject of this proceeding; Mother has not disputed that Father is entitled to this credit. Once a court with proper jurisdiction adjudicates the child's primary residential parent and the allocation of the parties' residential

-11-

parenting time, then the Juvenile Court below will have the information necessary to enter a final order on Father's child support obligation. All other issues raised on appeal are pretermitted by this decision.[13]

The decision of the Juvenile Court is affirmed in part and vacated in part, and the cause is remanded for proceedings consistent with this Opinion. Costs on appeal are assessed one-half against Respondent/Appellee Joshua Scritchfield and one-half against Petitioner/Appellant Sarah Patricia Emanuele, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE

---

[13]Mother submitted a reply brief to this Court on July 29, 2013. Mother's reply brief is untimely, so we decline to consider it. *See* Tenn. R. App. P. 29(a) (requiring reply briefs be served and filed within 14 days after filing of the preceding brief).