FILED
12/15/2022
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 1, 2022

**IN RE AIDEN W.L.**

**Appeal from the Juvenile Court for Shelby County**
**No. V8599    Dan H. Michael, Judge**

_____

**No. W2021-01187-COA-R3-JV**

_____

In this custody case, Appellant/Mother asserts that the trial court erred in its best interest analysis by failing to consider the preference of the minor child under Tennessee Code Annotated section 36-6-106(a)(13).  As such, she contends that the trial court erred in designating Father/Appellee the primary residential parent.  Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and JOHN W. MCCLARTY, J., joined.

Ada Johnson, Memphis, Tennessee, for the appellant, M.L.[1]

Gregory S. Gallagher, Memphis, Tennessee, for the appellee, C.L.

**OPINION**

**I. Background**

Appellant, M.L. ("Mother") and Appellee C.L. ("Father") were never married; however, they were in a relationship for approximately ten years until they separated in August 2015.  During the course of the relationship, Mother gave birth to four children, Aiden W.L. (d/o/b June 2007), Madison W. (d/o/b December 2008), Lila W. (d/o/b December 2008), and Morgan W.L. (d/o/b March 2010).[2]  The custody of Aiden W.L. (the

---

[1] In cases involving minor children, it is the policy of this Court to redact the parties' names to protect their identities.

[2] Father is listed on Morgan W.L.'s birth certificate.

"Child") is the subject of this appeal. As such, we will discuss the procedure concerning the other children only to the extent necessary to adjudicate the instant appeal.

At the time of Mother and Father's separation, Aiden was eight years old. Mother was the primary residential parent of all four children from August 2015 until September 2017, when the parties privately agreed that Father would assume custody of all four children while Mother attempted to obtain stable housing. In December 2017, Father dropped the children with Mother for visitation. Mother failed to return the children to Father, and the instant lawsuit commenced.

On February 2, 2018, Father, acting *pro se*, filed a petition to rescind his voluntary acknowledgement of paternity for Morgan W.L. in the Juvenile Court for Shelby County ("trial court"). As grounds, Father asserted that Mother fraudulently led him to believe that he was Morgan's father. Father attached DNA results that he procured through a private lab, which results showed a 0% probability of Father's paternity of Morgan. Before Father's petition was decided, on June 1, 2018, Mother filed a petition to establish parentage and set support for the children. A *guardian ad litem* was appointed to represent the children.

On January 17, 2019, the trial court Magistrate entered findings of fact and conclusions of law, wherein she found that court-ordered, DNA testing showed that Father was not the biological parent of either Madison W. or Lila W. Although Father attached, to his petition to rescind the voluntary acknowledgement of paternity, a privately-procured DNA test showing that he was not Morgan W.L.'s biological father, the Magistrate ordered the parties to submit to another DNA test to establish paternity for Morgan. On February 19, 2019, Father filed a petition for custody/visitation, seeking a custody determination for Aiden W.L. An attorney was subsequently appointed to represent Mother. On April 19, 2019, the Magistrate granted the parties temporary joint-custody of Aiden W.L. and continued the hearing on the parties' respective petitions.

On May 8, 2019, Father filed a motion asking the trial court to hear the reasonable preference of Aiden W.L. pursuant to Tennessee Code Annotated section 36-6-106(a)(13). On the same day, Father filed an amended and supplemental petition to be named Aiden's primary residential parent. As grounds for his petition, Father alleged that: (1) Mother "has intentionally and willfully discouraged and failed to facilitate a close continuing relationship" between Father and Aiden by "intentionally [keeping] the Child from [Father] since December 2017"; (2) Mother "has intentionally and willfully failed to provide for the educational needs of the [C]hild"; (3) Mother's "lack of moral and emotional fitness has caused the child to suffer mental anguish. Specifically, the lies and deceit of the [Mother] have caused all of her children to suffer mental anguish by lying to the children that the [Father] was the natural father of all of the children of the [Mother]"; (4) Mother's "lies and deceit to the child and her siblings constitutes 'emotional abuse'"; (5) Mother's "lifestyle has resulted in the [C]hild living in an unstable environment with little or no

- 2 -

continuity."

On June 17, 2019, the Magistrate entered an order granting Father's petition to rescind his voluntary acknowledgment of paternity for Morgan W.L. based on the fact that Father was excluded as Morgan's father through court-ordered DNA testing. After several continuances and a failed attempt at mediation, Father's petition to be named Aiden W.L.'s primary residential parent was heard over three days in November 2019. The Magistrate did not enter an order on the hearing until November 6, 2020. The Magistrate found a material change in circumstances based on the following facts: (1) "the [Mother] has been arrested for neglect"; (2) the [Mother] and her children have lived in hotels, and have been homeless for some period of time, the [Mother] and the children have lived in a van for a period of time"; (3) "DNA evidence has been produced of non-paternity of the other three (3) siblings of the Child"; (4) "that the Child is not in her correct grade level in school, that proof was presented that the Child might have a learning disability that has not been effectively dealt with by the Child's parents"; (5) "that the [Mother] has had a crippling lack of support system, has lived with the children in crippling poverty, and she has had no career and no steady stream of income." The Magistrate went on to consider the best interest factors set out at Tennessee Code Annotated section 36-6-106, holding that these factors weighed in favor of Father being named the Child's primary residential parent. The Magistrate granted Father's petition to be named Aiden's primary residential parent and awarded Mother 150 days of visitation per year.

Mother moved for rehearing. A special judge was appointed, and the motion was set for hearing on April 19, 2021. While the motion for rehearing was pending, on November 30, 2020, Mother filed a motion to set visitation pending rehearing. On April 16, 2021, Father filed a response in opposition to Mother's motion to set visitation. Father attached, to his motion, a Germantown Police Department Arrest Information Sheet showing that Mother was arrested on August 30, 2017 on three charges of "child abuse (felony) eight years of age or less"; one charge of prostitution; and one charge of "child abuse (misdemeanor)." Mother moved to quash the Arrest Information Sheet. Although the record does not contain an order on Mother's motion to quash, from the trial court's final order, discussed *infra*, it is apparent that the trial court considered the Arrest Information Sheet in making its decision. On appeal, Mother does not raise an issue concerning the trial court's implicit denial of her motion to quash.

On April 19, 2021, the trial court granted Mother temporary standard visitation and continued the case until May 3, 2021. The case was continued several more times until it was heard by the special judge on April 19, May 10, and June 21, 2021. On September 7, 2021, the trial court entered its final order granting Father's petition to be named Aiden W.L.'s primary residential parent. The trial court found a material change in circumstances based on: (1) the circumstances surrounding Mother's August 30, 2017 arrest; (2) Mother's misleading Father as to the children's paternity; and (3) the emotional distress she perpetrated on the children. Because Mother's sole appellate issue, *infra*, involves only

- 3 -

the trial court's best interest analysis, we will not elaborate on the sensitive facts giving rise to the trial court's conclusion that there had been a material change in circumstances to warrant naming Father as Aiden's primary residential parent. Rather, we will focus our analysis on the trial court's best interest analysis.

In its September 7, 2021 order, the trial court considered the factors set out at Tennessee Code Annotated section 36-6-106 and specifically found:[3]

---

[3] At the time Father filed his petition, Tennessee Code Annotated section 36-6-106 provided, in relevant part:

(a) In a suit for annulment, divorce, separate maintenance, or in any other proceeding requiring the court to make a custody determination regarding a minor child, the determination shall be made on the basis of the best interest of the child. In taking into account the child's best interest, the court shall order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child consistent with the factors set out in this subsection (a), the location of the residences of the parents, the child's need for stability and all other relevant factors. The court shall consider all relevant factors, including the following, where applicable:

(1) The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;
(2) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent or any caregiver denying parenting time to either parent in violation of a court order;

***

(4) The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;
(5) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;
(6) The love, affection, and emotional ties existing between each parent and the child;
(7) The emotional needs and developmental level of the child;
(8) The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child. The court may order an examination of a party under Rule 35 of the Tennessee Rules of Civil Procedure and, if necessary for the conduct of the proceedings, order the disclosure of confidential mental health information of a party under § 33-3-105(3). The court order required by § 33-3-105(3) must contain a qualified protective order that limits the dissemination of confidential protected mental health

1. The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child. Following the separation of the mother and the father, the Court found that the [F]ather had provided a stable environment for the child while the child was with him and that the [M]other had not provided stability for the child when the child was with her. The Court made the following findings of fact for factor 1:

> a. The Mother and Father were together for ten (10) years until they separated in August 2015.
> b. The Child was eight (8) years of age when the Mother and Father separated.
> c. The Mother was the Primary Residential parent of the Child from August 2015 until September 2017.
> d. In September 2017, by the agreement of the parties [] Father became the Primary Residential Parent for all four (4) children including the Child, until December 2017.
> e. In December 2017, the Father dropped all four (4) children off with the Mother to give her an opportunity to see the children.
> f. Due to the Mother's intentional actions, the Father was unable to see the Child until April 2019, when this Court ordered parenting time for the Father.
> g. The Mother was the Primary Residential parent for the Child until November 2019, when the Court ordered that the Father

information to the purpose of the litigation pending before the court and provides for the return or destruction of the confidential protected mental health information at the conclusion of the proceedings;

(9) The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(10) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(11) Evidence of physical or emotional abuse to the child, to the other parent or to any other person. The court shall, where appropriate, refer any issues of abuse to juvenile court for further proceedings;

(12) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(13) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

(14) Each parent's employment schedule, and the court may make accommodations consistent with those schedules;

(15) Any other factors deemed relevant by the court; and

would be the Primary Residential Parent of the Child.

h. Father was the Primary Residential parent for the Child from November 2019, until this matter was concluded on June 28, 2021.

i. The Court found both parents were the Primary Residential parents for the Child for approximately eight (8) years.

j. Mother did not have a stable relationship with the Child when she was the Primary Residential parent when she lived in a van and numerous hotels.

k. Father did have a stable relationship and environment for the Child when he was the Primary Residential Parent and he had a strong relationship with the Child.

The Courts findings favored the Father for factor 1.

2. Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and the other of the child's parents, consistent with the best interest of the child. The Court made the following findings of fact for factor 2:

a. After the Father obtained the DNA results excluding him from being the father of all of the children but Aiden, he attempted to see Aiden but he was told by Mother that he could either see "them all or none of them."

b. During the time period from September 2017 to December 2017, when Father had all four (4) children he encouraged the Mother to see the children but Mother only saw the children two (2) times for a brief time. Mother claimed she did not have a place to stay to have the children with her.

c. During the period from December 2017 to April 2019 the Mother kept the Father from seeing said child and the Father's only contact with the child was through a messaging app.

d. Beginning in November 2019, the Father tried to facilitate visits with the Mother but she was uncooperative, claiming since she did not have a court order, she did not know she could see said Child.

e. The Mother admitted making derogatory vile remarks about the Father in the presence of the Child.

The Court's findings favored Father for factor 2.

4. The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care. The Court made the following findings of fact for factor 4:

> a. Following the separation of the Mother and the Father, the Mother lived with the Child and was homeless for a time, lived in a van, and lived in hotels.
> b. In addition, during the above period, Mother kept the Child out of school for a full year.
> c. When the Court ordered the Child to live with the Father in November 2019, the Child was two (2) grades behind the school grade she should have been in.
> d. The Court found that after the Child went to live with the Father, the Mother told the Child to do badly in school.
> e. The Mother tore up a child support check given to her by the Father, and Mother claimed she did this because the check did not go through the Court.
> f. After the Child went to live with the Father, the Father got the Child into counseling, [and] got the Child in a summer school program to help with her education.
> g. The Father has provided stability, a support system, food and clothing since the Child has been living with him.

The Court findings favored Father for factor 4.

5. The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibilities. The Court made the following findings of fact regarding factor 6:

> a. The Court referred to the timeline laid out in factor 1, and the Court incorporated said timeline by reference.
> b. The Court found that the Child had been living with the Father since November 2019, and that the Father had been the primary residential parent.

The Court's findings favored Father for factor 5.

6. The love, affection, and emotional ties existing between each party and the child. The Court made the following findings of fact for factor 6:

> a. The Child's psychological records from Compass Mental

Health were entered into the record.[4]
b. The Court found that in the Compass records for the Child (specifically page 5 of 67 pages) that the Child's main triggers were caused by her Mother.
c. The Court found the Child loved both her Mother and her Father

The Court findings of fact favored the Father for factor 6.

7. The emotional needs and development of the child. The Court made the following findings of fact for factor 7:

a. The Compass assessment records for the Child (specifically page 5 of 67) showed that the Child was a 13-year-old African American female with a history of depression and anxiety and trauma related to neglect by Mother.
b. The Compass records further showed the Child was overwhelmed by the custody dispute between the Mother and the Father.
c. The Compass records showed the Child had been diagnosed with a major depression disorder and generalized anxiety disorder, parent/child relationship problem.
d. The Court found the Child needed treatment.
e. The Father got the Child into treatment.
f. The Father has a family support network necessary to raise a teenage girl.

The Court findings favored Father for factor 7.

8. The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child. The Court made the following findings as to factor 8:

a. The Court found that the Mother placed the Child in positions where she experienced trauma. Specifically, the incident regarding the arrest of the Mother in Germantown, Tennessee. when she left the children alone in a vehicle while she engaged in sex for money.
b. The Court also found that the Mother exposed the Child to trauma when she thought it was in the Child's best interest to have her children read their own DNA results on video.

---

[4] The Child's records from Compass Mental Health are not included in the appellate record.

c. The Court found Father had suffered depression issues but that did not affect his ability to parent the Child.

The Court's findings favored Father for factor 8.

9. The child's interaction and interrelationship with siblings, and other relatives and step relatives, and mentors as well as the child's involvement with the child's physical surroundings, school, or other significant activities. The Court made the following findings of fact for factor 9:

a. The Court found that the Child had four (4) siblings living with Mother.
b. The Court found that the Child has a paternal cousin living with her and the Father.
c. The Court found that the Child had a support system with the Father of a paternal grandmother, and two (2) paternal aunts.
d. The Court found the Father got the Child into school and into counseling.

The Court's findings for factor 9 favored Father.

10. The importance of continuity in the child's life and the length of time the child has lived in a stable satisfactory environment. The Court made the following findings of fact for factor 10:

a. The Court found the Father had been in the same apartment . . . for five (5) years.
b. The Court found the Child has been living with the Father in a stable environment since November 2019.
c. Mother does not have a stable environment; she is living in a home inherited by her brother without a lease, and the house is scheduled for a tax sale in November 2021.
d. Prior to moving in the house she is living in, Mother was homeless living in a van and in hotels.

The Court's findings for factor 10 favored Father.

11. Evidence of physical or emotional abuse to the child, to the other parent or to any other person. The Court made the following findings of fact for factor 11:

a. The Court referred to the earlier trauma inflicted by the

Mother as to her arrest and the paternity issue with the children. And those findings are incorporated herein by reference.

b. The Court found the Mother called the Father derogatory names in front of the Child.

c. That the Father testified that the Child told him that the Child had been duct taped by her siblings at the Mother's request and the Child was beaten.

d. That the Father testified that the Child told him that the Child was given bread and water on occasion when the other children were given normal meals.

e. That the Child told the Father that she did not want to get the Mother in trouble when speaking with DCS and the Child denied the abuse.

f. Mother admitted whipping the Child with a belt when the Child was younger.

g. The Court did not find any abuse of the Child on the part of the Father.

The Court's findings of fact favored the Father on factor 11.

12. The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child. The Court made the following findings of fact for factor 12:

a. The Court found the Mother lives in a home with the Child's . . . siblings.

b. The Court found the Father lives in an apartment with a paternal cousin who helps the Child with her school work.

The Court's findings of fact did not favor either the Mother or the Father for factor 12.

\*\*\*

14. Each parent's employment schedule, and the court may make accommodations consistent with those schedules. Based on the Mother's instability and lack of consistent employment, the Court found that she had more available time for the Child vs. the Father who had had a consistent job with the Memphis Fire Department for many years. The Court made the following findings of fact for factor 14:

a. The Court found that the Mother cleans houses but that had dropped off to a couple of houses due to Covid.

b. The Court found that the Father was a firefighter/paramedic with the City of Memphis Fire Department.
c. The Court found that Father works three (3) days a week, each shift being 24 hours.
d. The Court found that the paternal grandmother, the paternal cousin, and the paternal aunts help out with the Child while Father is at work.

The Court found that if you look at sheer availability for parenting time, this factor favors Mother.

15. Any other factors deemed relevant by the Court. The Court made the following findings of fact for factor 15:

a. The Court reiterated the findings of fact regarding Mother's arrest and the paternity issue but the Court did not go back into the detail of those factors.
b. The guardian ad litem advocated that it was in the best interest of said Child that custody be awarded to Father.

The Court found that factor 15 favored Father.

Based on the foregoing findings, the trial court named Father the Child's primary residential parent and awarded Mother limited, supervised visitation. The trial court's ruling on Mother's visitation was premised on "the active warrant being outstanding for Mother, the fact that the Mother is a trigger for the Child, and [] on the Mother's traumatization of the Child." Mother filed a timely notice of appeal to this Court. The trial court subsequently rejected Mother's proposed Tennessee Rule of Appellate Procedure 24(c) statement of the evidence. As such, the appellate record is comprised of two volumes of technical record and three exhibits. There is no transcript or statement of the evidence.

## II. Issue

Mother raises one issue for review as stated in her brief:

Whether the trial court erred in weighing the factors of Tenn. Code Ann. § 36-6-106 to determine the best interest of the Child by failing to hear testimony from the Child.

## III. Standard of Review

We are "'mindful that trial courts are vested with wide discretion in matters of child custody.'" *Schaeffer v. Patterson*, No. W2018-02097-COA-R3-JV, 2019 WL 6824903, at

- 11 -

\*4 (Tenn. Ct. App. Dec. 13, 2019) (quoting **Johnson v. Johnson**, 165 S.W.3d 640, 645 (Tenn. Ct. App. 2004)). Appellate courts will not interfere with a trial court's custody determination absent an abuse of discretion. **Dungey v. Dungey**, No. M2020-00277-COA-R3-CV, 2020 WL 5666906, at \*2 (Tenn. Ct. App. Sept. 23, 2020) (quoting **C.W.H. v. L.A.S.**, 538 S.W.3d 488, 495 (Tenn. 2017)). This Court may reverse a custody decision "only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence." **Dungey**, 2020 WL 5666906, at \*2 (quoting **C.W.H.**, 538 S.W.3d at 495). "This Court's 'paramount concern' is the well-being and best interests of the child . . . ." **Schaeffer**, 2019 WL 6824903, at \*4 (citing **Johnson**, 165 S.W.3d at 645). In **C.W.H.**, the Tennessee Supreme Court "emphasized the limited scope of review to be employed by an appellate court in reviewing a trial court's factual determinations in matters involving child custody . . . ." **C.W.H.**, 538 S.W.3d at 495 (citing **Armbrister v. Armbrister**, 414 S.W.3d 685, 692-93 (Tenn. 2013)). Pursuant to Tennessee Rule of Appellate Procedure 13, "appellate courts must presume that a trial court's factual findings on these matters are correct and not overturn them, unless the evidence preponderates against the trial court's findings." **Armbrister**, 414 S.W.3d at 693 (citations omitted).

In the instant case, our review is further limited by the fact that there is no transcript or Tennessee Rule of Appellate Procedure 24(c) statement of the evidence. In addition, some of the exhibits considered by the trial court, e.g., the Child's records from Compass Mental Health, are not included in the appellate record. It is well settled that in cases where no transcript or statement of the evidence is filed, the appellate court is required to presume that the record, had it been properly preserved, would have supported the action of the trial court. *See* **Fayne v. Vincent**, 301 S.W.3d 162, 169-70 (Tenn. 2009) ("[W]hen an issue of sufficiency of the evidence is raised on appeal, we must presume, in the absence of a record of the proceedings, that the transcript or statement of the evidence, had it been included in the record, would have contained sufficient evidence to support the trial court's factual conclusions."); **Reinhardt v. Neal**, 241 S.W.3d 472, 477 (Tenn. Ct. App. 2007) (explaining that in the absence of a transcript or statement of the evidence, the appellate court had to presume that the evidence supported the trial court's findings and ultimate conclusion that there was a failure of proof); **Sherrod v. Wix**, 849 S.W.2d 780, 783 (Tenn. Ct. App. 1992) ("This court cannot review the facts *de novo* without an appellate record containing the facts, and therefore, we must assume that the record, had it been preserved, would have contained sufficient evidence to support the trial court's factual findings."). Furthermore, this Court has held that "the burden is . . . on the appellant to provide the Court with a transcript of the evidence or a statement of the evidence . . . ." **Outdoor Mgmt., LLC v. Thomas**, 249 S.W.3d 368, 377 (Tenn. Ct. App. 2007) (noting the "conclusive presumption that there was sufficient evidence before the trial court to support its judgment" if no transcript or statement of the evidence is submitted). With the foregoing in mind, we turn to the issue.

## IV. Analysis

In addition to the best interest findings set out above, the trial court also made the following finding under Tennessee Code Annotated section 36-6-106(a)(13):

> 13. The reasonable preference of the child if twelve years or older. The Court made the following findings of fact regarding factor 13:
>
> > a. This factor was not applicable.
> > b. The Court found that the Father filed a request for the Court to hear the Child's preference but the Father withdrew his request.
> > c. The Court found that the Child was in counseling and would be traumatized by having to testify, and the guardian ad litem advocated against the child testifying.
> > d. The Court did not hear from the Child.

The Court found factor 13 was not applicable to this case.

Mother challenges the trial court's decision to exclude the Child's testimony at trial. We reiterate that trial courts have broad discretion in fashioning child custody arrangements that best suit the unique circumstances of each case. *Parker v. Parker*, 986 S.W.2d 557, 563 (Tenn. 1999). However, that discretion is limited to some degree by the statutory directive that such determinations "shall be made on the basis of the best interest of the child." Tenn. Code. Ann. § 36-6-106(a). In addition, Tennessee Code Annotated section 36-6-106 requires a court to consider the "reasonable preference of the child if twelve (12) years of age or older." See Tenn. Code Ann. § 36-6-106(a)(13) ("The court **shall** consider all relevant factors, including the following, where applicable . . . (13) The reasonable preference of the child if twelve (12) years of age or older.") (emphasis added). Nonetheless, the decision to exclude a child's testimony does not necessarily violate the statutory mandate. *Lutrell v. Wassenburg*, No. W2017-02443-COA-R3-CV, 2020 WL 3867131, at *6 (Tenn. Ct. App. July 9, 2020) (citing *Hill v. Hill*, No. M2006-01792-COA-R3-CV, 2008 WL 110101, at *6 (Tenn. Ct. App. Jan. 9, 2008) (affirming the trial court's custody modification decision although the court excluded an older child's testimony when the record indicated that the court knew and considered the child's preference.)). Indeed, determining a child's best interest is a "fact-sensitive inquiry," and the relevancy and weight to be given each factor depends on the unique facts of each case. *Solima v. Solima*, No. M2014-01452-COA-R3-CV, 2015 WL 4594134, at *4 (Tenn. Ct. App. July 30, 2015) (quoting *In re Marr*, 194 S.W.3d 490, 499 (Tenn. Ct. App. 2005)).

Here, the trial court made clear findings as to why it excluded the Child's testimony. Specifically, "[t]he Court found that the Child was in counseling and would be traumatized by having to testify, and the guardian ad litem advocated against the child testifying."

Accordingly, the trial court found that the Child's preference was "not applicable" to its best interest determination. A trial court has discretion to control the proceedings in its courtroom and to make evidentiary decisions, and its decisions will not be overturned absent an abuse of that discretion. *State v. Mosley*, 200 S.W.3d 624, 629 (Tenn. Crim. App. 2005); *Hessmer v. Hessmer*, 138 S.W.3d 901, 904 (Tenn. Ct. App. 2003). Still, discretionary decisions of a trial court must take applicable facts and legal principles into account and are not immune from meaningful review on appeal. *See Gooding v. Gooding*, 477 S.W.3d 774 (Tenn. Ct. App. 2015). "An abuse of discretion occurs when a court strays beyond applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision." *Id* at 781. Here, the trial court gave sound reasons for refusing to consider the Child's preference. In view of the lack of a transcript, statement of the evidence, and certain relevant exhibits in the record, we "cannot review the facts *de novo*"; "therefore, we must assume that the record, had it been preserved, would have contained sufficient evidence to support the trial court's factual findings."). *Sherrod*, 849 S.W.2d at 783. Applying this standard, we cannot conclude that the trial court abused its discretion or otherwise erred in refusing to hear the Child's preference.

Nonetheless, even if we assume, *arguendo*, that the Child's preference would have been to live with Mother, the preference of a child older than twelve is but one of many factors to considered in determining his or her best interest. *See* Tenn. Code Ann. § 36-6-106(a). In fact, this Court has held that the child's preference is not controlling on the trial court, and it is error for a trial court to base its decision solely on a child's preference. *Harris v. Harris*, 832 S.W.2d 352, 354 (Tenn. Ct. App. 1992). As this Court has explained:

> There is good reason for this rule. While a child's expressed preference may reflect legitimate and wise reasons, it may just as easily reflect manipulation by a parent or a successful campaign by one parent to alienate the child from the other parent. *Krupp v. Cunningham–Grogan*, No. M2005-01098-COA-R3-CV, 2006 WL 2505037, at *9 (Tenn. Ct. App. Aug. 29, 2006). However, when a trial court is reasonably satisfied that a child has not been manipulated and the child's reasons for his preference are not frivolous, "it is permissible, indeed important, to give significant weight to the child's testimony on the parent with whom he wants to live." *Maxwell v. Woodard*, No.2011-02482-COA-R3-CV, 2013 WL 2420500, at *19 (Tenn. Ct. App. May 31, 2013).

*Robinson v. Robinson*, No. M2014-00431-COA-R3-CV, 2015 WL 1259265, at *5 (Tenn. Ct. App. March 16, 2015). Here, the trial court made numerous findings concerning Mother's pattern of manipulating and using the children to prey on Father's emotions. Given Mother's propensity to emotionally manipulate her children, and the trial court's finding that Mother is a "trigger" for this Child, it is likely that the Child's testimony would be skewed and of no probative value.

Finally, as set out above, the trial court found that the majority of the Tennessee Code Annotated section 36-6-106 factors weighed in favor of Father. In the absence of a transcript or statement of the evidence, we presume that there was sufficient evidence to support these findings. Because the majority of the factors weigh in favor of Father being named Aiden W.L.'s primary residential parent, we cannot conclude that the trial court's denial of the Child's testimony would have led to a different result. In short, even assuming that the trial court erred in omitting evidence of Aiden's preference, such omission would be harmless error in view of the trial court's other best interest findings. Tenn. R. App. P. 36(b) ("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process.").

## V. Conclusion

For the foregoing reasons, the trial court's order is affirmed, and the case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to Appellant/Mother, M.L. Execution for costs may issue if necessary.

s/ Kenny Armstrong
KENNY ARMSTRONG, JUDGE